[This opinion has been published in *Ohio Official Reports* at 91 Ohio St.3d 3.]

MAYER, APPELLANT, *v*. BRISTOW, APPELLEE.

[Cite as *Mayer v. Bristow*, 2000-Ohio-109.]

*Courts—Vexatious litigator statute—R.C. 2323.52 is constitutional—R.C. 2323.52 grants authority to court of common pleas to order a vexatious litigator to obtain its leave before proceeding in the Court of Claims, a court of common pleas, municipal court, or county court—Court of common pleas has no authority under R.C. 2323.52 to restrict the activities of a vexatious litigator in courts other than those specifically enumerated Ohio trial courts.*

(Nos. 99-2216 and 00-56—Submitted November 14, 2000—Decided December 29, 2000.)

CERTIFIED by and APPEAL from the Court of Appeals for Crawford County, No. 3-98-29.

_____

SYLLABUS OF THE COURT

1. R.C. 2323.52, the vexatious litigator statute, is constitutional in its entirety.

2. R.C. 2323.52 grants authority to the court of common pleas to order a vexatious litigator to obtain its leave before proceeding in the Court of Claims, a court of common pleas, municipal court, or county court. A court of common pleas has no authority under R.C. 2323.52, or pursuant to its own inherent powers to prevent abuse of the judicial process, to restrict the activities of a vexatious litigator in courts other than these specifically enumerated Ohio trial courts.

_____

ALICE ROBIE RESNICK, J.

**{¶ 1}** On June 1, 1998, plaintiff-appellant, James J. Mayer, Jr., Prosecuting Attorney of Richland County, Ohio, filed a complaint in the Crawford County Court of Common Pleas to have defendant-appellee, Lonny Lee Bristow, declared a "vexatious litigator" pursuant to R.C. 2323.52. In his answer, Bristow admitted to "all of the allegations contained in the complaint."

**{¶ 2}** Bristow's admission to being a vexatious litigator was apparently made as part of a plea agreement in a criminal case, which is described in *State v. Bristow* (Mar. 26, 1999), Wyandot App. No. 3-98-24, unreported, 1999 WL 254098, as follows:

"On Monday, June 1, 1998, Bristow entered guilty pleas in Crawford County Case No. 98-CR-54 to three felonies: Aiding an Escape in violation of R.C. § 2921.35(A) and two counts of Harassment by Inmate in violation of R.C. § 2921.38(A). The Friday before Bristow pled guilty to the charges in Case No. 98-CR-54, a jury found Bristow guilty in a separate criminal case of committing fourteen counts of felony telephone harassment. (Crawford County Case No. 98-CR-53). Bristow's sentencing in the telephone harassment case was continued to Monday, June 1, 1998. During Bristow's sentencing in that case, his counsel interrupted the court and advised the trial judge that Bristow wanted to accept a previously negotiated plea bargain that he had earlier refused. That negotiated plea encompassed an agreed sentence in the telephone harassment case, Bristow's admission of guilt and an agreed sentence with respect to another case involving a probation violation and the charges at issue in this case. The agreement also called for Bristow's admission to being a vexatious litigator in response to a civil action filed by the State."

**{¶ 3}** Accordingly, in its judgment entry dated June 1, 1998, the trial court determined Bristow to be a vexatious litigator as defined in R.C. 2323.52(A)(3), and ordered that Bristow be prohibited from doing all of the following without first obtaining leave of the court to proceed:

"(a) Instituting legal proceedings in the court of claims or in a court of common pleas, municipal court, or county court;

"(b) Continuing any legal proceedings that the defendant had instituted in the court of claims or in a court of common pleas, municipal court, or county court prior to the entry of this order; and

"(c) Making any application, other than an application for leave to proceed under Ohio Revised Code Section 2323.52(F), in any legal proceedings instituted by the defendant or another person in the court of claims or in a court of common pleas, municipal court, or county court."

{¶ 4} On July 30, 1998, the trial court found that Bristow had violated the terms of the June 1, 1998 order and "still harbors future plans of blanketing certain individuals with lawsuits." Accordingly, the court ordered that Bristow "not have mail privileges at any state institution wherein he may be housed."

{¶ 5} However, this order was subsequently modified in a judgment entry dated August 20, 1998, which reads, in its entirety:

"Based upon practical concerns raised by the State of Ohio, Department of Rehabilitation and Correction, the Judgment Entry of July 30, 1998 is hereby clarified as follows:

"It is hereby ORDERED, ADJUDGED and DECREED that the State of Ohio, Department of Rehabilitation and Correction may send out mail from Lonny Lee Bristow without opening it if:

"1. It is addressed to Judge Nelfred G. Kimerline, care of either the Crawford County or Richland County Court of Common Pleas. In this way, defendant Bristow is assured of mail privileges to file any legal papers in this action or in his criminal matters and is further assured mail privileges to file any legal paper to institute any non-frivolous action upon motion and order of this Court.

"2. It is addressed to any attorney-at-law not listed below as a person requesting to not receive mail from Bristow. In this way, Bristow is assured mail privileges to access legal counsel or advice should he so choose.

"It is further ORDERED that the State of Ohio, Department of Rehabilitation and Correction will not send out mail from Lonny Lee Bristow that is addressed to any person Bristow has harassed in the past and who does not want to receive mail from Bristow. Counsel for plaintiff herein shall provide the Department of Rehabilitation and Correction a list of such persons for purposes of implementation of this portion of this Order.

"It is further ORDERED that the State of Ohio will examine all other outgoing mail suspected to be from Lonny Lee Bristow to any other addressee not listed above, to determine whether the outgoing mail includes materials in violation of this Court's order. If these mailings contain pleadings or other materials believed to be in violation of this Court's Order, they shall be sent to this Court. This measure is necessary in light of Bristow's threats and promises to file vexatious pleadings by himself and through others.

"It is further ORDERED that any mail from Lonny Lee Bristow that is addressed to any court other than to Judge Nelfred G. Kimerline, as stated above, shall be forward[ed] to this Court for a determination as to its disposition.

"Every time a court of law takes a step to curb Bristow's proven abuse of the judicial system, he finds another way to access another court for the only purpose of satisfying his vindictiveness through the filing of frivolous lawsuits. Innocent people in Richland County, including law enforcement officials, judges, the Sheriff, their families and even their children are the perpetual victims of Bristow's meritless lawsuits and his vulgar, menacing, threatening letters and phone calls. Although several courts in Ohio now refuse his pauper pleadings and he has been declared a vexatious litigator in Ohio, Bristow has pledged to, and is now filing his frivolous actions across the United States and in foreign countries.

4

"Based upon the foregoing, the Court hereby finds a substantial governmental interest in curbing Bristow's costly abuses of the judiciary and others and has issued this Order and the Order of July 30, 1998 to facilitate protection of that interest.

"The court finds that these Orders are limited to accomplish this governmental interest and are unrelated to the suppression of free expression.

"IT IS SO ORDERED."

{¶ 6} On September 21, 1998, Bristow filed a motion for leave to proceed on a civil complaint to be filed in the Richland County Court of Common Pleas against various employees of the Richland County Sheriff's Department for allegedly violating and conspiring to violate his constitutional rights, and against another individual for alleged defamation. In a judgment entry dated December 16, 1998, the trial court denied Bristow's motion for leave to file this proposed complaint.

{¶ 7} On appeal, Bristow challenged the constitutionality of the trial court's August 20, 1998 judgment entry. Bristow argued that while R.C. 2323.52 "ensures one a right of access to the courts by asking a certain court permission to proceed in another court * * * [t]he order now being appealed goes way over the scope of said authority." Specifically, Bristow argued that the trial court's authority under R.C. 2323.52 is limited to monitoring his lawsuits brought in Ohio courts, and that the court's restrictions on his mail are in contravention of Ohio Adm.Code 5120-9-18.

{¶ 8} The court of appeals recognized that Bristow's arguments were directed at the procedure established in the trial court's August 20, 1998 order, rather than at the statute itself. Nevertheless, the majority of the court of appeals found that the trial court's order was essentially an implementation of the procedure contemplated under R.C. 2323.52 in the context of incarceration and proceeded "to analyze R.C. 2323.52 itself under Article I, Section 16 of the Ohio Constitution."

**{¶ 9}** The majority ultimately held that "the procedure established by R.C. 2323.52, the vexatious litigator statute, fails to provide a reasonable and meaningful substitute for direct access to Ohio's trial courts. We therefore determine that the statute is unconstitutional in its entirety as violative of Ohio Const., Art. I Sec. 16." In so doing, the court of appeals found that a conflict exists between its decision and those of the First District Court of Appeals in *Deters v. Briggs* (Dec. 31, 1998), Hamilton App. No. C-971033, unreported, 1998 WL 906405, and the Tenth District Court of Appeals in *Cent. Ohio Transit Auth. v. Timson* (1998), 132 Ohio App.3d 41, 724 N.E.2d 458, and certified the issue to this court pursuant to Section 3(B)(4), Article IV of the Ohio Constitution.

**{¶ 10}** Judge Hadley, dissenting, found that the issue of the statute's constitutionality had not been properly raised, that in any event the statute is constitutional, and that the trial court's August 20, 1998 order "is overbroad because it prohibits a vexatious litigator from instituting a legal proceeding or action in a court other tha[n] those enumerated in the statute."

**{¶ 11}** The cause is now before this court pursuant to Section 3(B)(4), Article IV of the Ohio Constitution (case No. 99-2216), and the allowance of a discretionary appeal (case No. 00-56).

**{¶ 12}** We are asked to determine whether, and to what extent, R.C. 2323.52 is unconstitutional. We are also asked to make a similar determination with regard to the trial court's August 20, 1998 "mail restriction" or "implementation" order, and to decide whether, and to what extent, that order violates the provisions of R.C. 2323.52, contravenes Ohio Adm.Code 5120-9-18, and/or exceeds the trial court's inherent authority to protect its own docket.

I

Preliminary Issues

**{¶ 13}** The unusual procedural circumstances of this case have given rise to certain preliminary concerns about the propriety of the court of appeals' decision

to address the constitutionality of R.C. 2323.52. While no one questions the appellate court's authority to determine the legality or constitutionality of the trial court's August 20, 1998 order, a question was raised at oral argument whether the court of appeals lacked jurisdiction to consider the constitutionality of R.C. 2323.52 because the Attorney General was not served in accordance with R.C. 2721.12.

**{¶ 14}** The question appears to have been prompted by the court's recent decision in *Cicco v. Stockmaster* (2000), 89 Ohio St.3d 95, 728 N.E.2d 1066, which held:

"A party who is challenging the constitutionality of a statute must assert the claim in the complaint (or other initial pleading) or an amendment thereto, and must serve the pleading upon the Attorney General in accordance with methods set forth in Civ.R. 4.1 in order to vest a trial court with jurisdiction under former R.C. 2721.12." *Id.* at the syllabus.

**{¶ 15}** At the time *Cicco* was decided, the court had already ordered the parties in this case to brief the issue whether R.C. 2323.52 is unconstitutional and granted the Attorney General's motion to intervene as a party for the purpose of being heard on this issue. (2000), 88 Ohio St.3d 1445, 725 N.E.2d 285. Thus, we were already poised to consider the constitutionality of R.C. 2323.52 in this case, despite the fact that the Attorney General was not notified that the constitutionality of the statute was under consideration until after the appellate court decided the issue *sua sponte*.

**{¶ 16}** A decision favoring jurisdiction in this case does not conflict with our holding regarding the timing and method of service in *Cicco*. The majority in *Cicco* explained that R.C. 2721.12 "identifies the Attorney General as an interested person [entitled to service] in cases where the constitutionality of a statute is challenged." *Id.*, 89 Ohio St.3d at 99, 728 N.E.2d at 1070. The majority acted to protect that interest by requiring a party who is challenging the constitutionality of a statute to assert the claim in the initial pleading and effect service in accordance

with Civ.R. 4.1. In so doing, the court was concerned that otherwise the Attorney General would be provided inadequate time to evaluate the issues and respond to the challenge, and, more specifically, that notification at the summary judgment stage comes too little, too late. *Id*. at 99-100, 728 N.E.2d at 1070-1071.

{¶ 17} However, as the Attorney General notes in her motion to intervene, in the instant case "[t]he Constitutionality of R.C. 2323.52 was not raised by either party, but was instead *sua sponte* addressed by the Third District Court of Appeals. Therefore, the Attorney General did not have a legal interest in this case prior to the Third District Court's decision." These are the circumstances that necessitated our action to grant intervention in this case at the later stages of the appellate process. It was the only way we could ensure that the Attorney General would be provided the same opportunity to address the constitutionality of R.C. 2323.52 that was provided to the other parties. Accordingly, our decision here is entirely consonant with the decision in *Cicco*; the two decisions simply represent the application of the same principles to differing procedural circumstances.

{¶ 18} Moreover, the issue is raised as to whether the court of appeals should have considered the constitutionality of the statute *sua sponte*. " 'Ohio law abounds with precedent to the effect that constitutional issues should not be decided unless absolutely necessary.' " *Ohioans for Fair Representation, Inc. v. Taft* (1993), 67 Ohio St.3d 180, 183, 616 N.E.2d 905, 908, quoting *Hall China Co. v. Pub. Util. Comm.* (1977), 50 Ohio St.2d 206, 210, 4 O.O.3d 390, 393, 364 N.E.2d 852, 854. However, the court of appeals specifically determined that it was necessary to consider the constitutionality of R.C. 2323.52 in rendering its decision, and we find nothing improper in its reasons for doing so.

{¶ 19} Accordingly, we now proceed to determine the merits of this appeal.

II

Constitutionality of R.C. 2323.52

A

The Statute

{¶ 20} Effective March 18, 1997, R.C. 2323.52, Ohio's vexatious litigator statute, provides as follows:

"(A) As used in this section:

"(1) 'Conduct' has the same meaning as in section 2323.51 of the Revised Code.

"(2) 'Vexatious conduct' means conduct of a party in a civil action that satisfies any of the following:

"(a) The conduct obviously serves merely to harass or maliciously injure another party to the civil action.

"(b) The conduct is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law.

"(c) The conduct is imposed solely for delay.

"(3) 'Vexatious litigator' means any person who has habitually, persistently, and without reasonable grounds engaged in vexatious conduct in a civil action or actions, whether in the court of claims or in a court of common pleas, municipal court, or county court, whether the person or another person instituted the civil action or actions, and whether the vexatious conduct was against the same party or against different parties in the civil action or actions. 'Vexatious litigator' does not include a person who is authorized to practice law in the courts of this state under the Ohio Supreme Court Rules for the Government of the Bar of Ohio unless that person is representing or has represented self pro se in the civil action or actions.

"(B) A person, the office of the attorney general, or a prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a municipal corporation who has defended against habitual and persistent vexatious conduct in the court of claims or in a court of common pleas, municipal court, or county court

may commence a civil action in a court of common pleas with jurisdiction over the person who allegedly engaged in the habitual and persistent vexatious conduct to have that person declared a vexatious litigator. The person, office of the attorney general, prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a municipal corporation may commence this civil action while the civil action or actions in which the habitual and persistent vexatious conduct occurred are still pending or within one year after the termination of the civil action or actions in which the habitual and persistent vexatious conduct occurred.

"(C) A civil action to have a person declared a vexatious litigator shall proceed as any other civil action, and the Ohio Rules of Civil Procedure apply to the action.

"(D)(1) If the person alleged to be a vexatious litigator is found to be a vexatious litigator, subject to division (D)(2) of this section, the court of common pleas may enter an order prohibiting the vexatious litigator from doing one or more of the following without first obtaining the leave of that court to proceed:

"(a) Instituting legal proceedings in the court of claims or in a court of common pleas, municipal court, or county court;

"(b) Continuing any legal proceedings that the vexatious litigator had instituted in the court of claims or in a court of common pleas, municipal court, or county court prior to the entry of the order;

"(c) Making any application, other than an application for leave to proceed under division (F) of this section, in any legal proceedings instituted by the vexatious litigator or another person in the court of claims or in a court of common pleas, municipal court, or county court.

"(2) If the court of common pleas finds a person who is authorized to practice law in the courts of this state under the Ohio Supreme Court Rules for the Government of the Bar of Ohio to be a vexatious litigator and enters an order described in division (D)(1) of this section in connection with that finding, the order

10

shall apply to the person only insofar as the person would seek to institute proceedings described in division (D)(1)(a) of this section on a pro se basis, continue proceedings described in division (D)(1)(b) of this section on a pro se basis, or make an application described in division (D)(1)(c) of this section on a pro se basis. The order shall not apply to the person insofar as the person represents one or more other persons in the person's capacity as a licensed and registered attorney in a civil or criminal action or proceeding or other matter in a court of common pleas, municipal court, or county court or in the court of claims. Division (D)(2) of this section does not affect any remedy that is available to a court or an adversely affected party under section 2323.51 or another section of the Revised Code, under Civil Rule 11 or another provision of the Ohio Rules of Civil Procedure, or under the common law of this state as a result of frivolous conduct or other inappropriate conduct by an attorney who represents one or more clients in connection with a civil or criminal action or proceeding or other matter in a court of common pleas, municipal court, or county court or in the court of claims.

"(E) An order that is entered under division (D)(1) of this section shall remain in force indefinitely unless the order provides for its expiration after a specified period of time.

"(F) A court of common pleas that entered an order under division (D)(1) of this section shall not grant a person found to be a vexatious litigator leave for the institution or continuance of, or the making of an application in, legal proceedings in the court of claims or in a court of common pleas, municipal court, or county court unless the court of common pleas that entered that order is satisfied that the proceedings or application are not an abuse of process of the court in question and that there are reasonable grounds for the proceedings or application. If a person who has been found to be a vexatious litigator under this section requests the court of common pleas that entered an order under division (D)(1) of this section to grant the person leave to proceed as described in this division, the period of time

commencing with the filing with that court of an application for the issuance of an order granting leave to proceed and ending with the issuance of an order of that nature shall not be computed as a part of an applicable period of limitations within which the legal proceedings or application involved generally must be instituted or made.

"(G) During the period of time that the order entered under division (D)(1) of this section is in force, no appeal by the person who is the subject of that order shall lie from a decision of the court of common pleas under division (F) of this section that denies that person leave for the institution or continuance of, or the making of an application in, legal proceedings in the court of claims or in a court of common pleas, municipal court, or county court.

"(H) The clerk of the court of common pleas that enters an order under division (D)(1) of this section shall send a certified copy of the order to the supreme court for publication in a manner that the supreme court determines is appropriate and that will facilitate the clerk of the court of claims and a clerk of a court of common pleas, municipal court, or county court in refusing to accept pleadings or other papers submitted for filing by persons who have been found to be a vexatious litigator under this section and who have failed to obtain leave to proceed under this section.

"(I) Whenever it appears by suggestion of the parties or otherwise that a person found to be a vexatious litigator under this section has instituted, continued, or made an application in legal proceedings without obtaining leave to proceed from the appropriate court of common pleas to do so under division (F) of this section, the court in which the legal proceedings are pending shall dismiss the proceedings or application of the vexatious litigator."

B

Section 16, Article I

{¶ 21} Section 16, Article I of the Ohio Constitution provides:

"All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."

{¶ 22} According to the Attorney General, "there are two separate inquiries under this section: first, whether the law is constitutional under the due course of law provision; second, whether the law is constitutional under the access-to-courts provision."

{¶ 23} We agree that the constitutionality of R.C. 2323.52 must be tested under both of these provisions. However, there comes a point in the analysis under each provision where we must determine the constitutionality of R.C. 2323.52 as it applies to restrict the activities of a person after he or she is determined to be a vexatious litigator. At this point, the analysis under the due-course-of-law and access-to-courts provisions of Section 16, Article I becomes so intertwined in application as to render any uncompromising insistence on separate inquiries unjustified. Thus, for purposes of this case, we will consider the constitutionality of the statute under both provisions as a single question.

{¶ 24} Generally, "[a] legislative enactment will be deemed valid on due process grounds ' * * * [1] if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and [2] if it is not unreasonable or arbitrary.' " *Mominee v. Scherbarth* (1986), 28 Ohio St.3d 270, 274, 28 OBR 346, 349-350, 503 N.E.2d 717, 720-721, quoting *Benjamin v. Columbus* (1957), 167 Ohio St. 103, 4 O.O.2d 113, 146 N.E.2d 854, paragraph five of the syllabus. See, also, *Morris v. Savoy* (1991), 61 Ohio St.3d 684, 688-689, 576 N.E.2d 765, 769.

{¶ 25} As aptly explained in *Timson, supra*, 132 Ohio App.3d at 50, 724 N.E.2d at 463-464:

"The purpose of the vexatious litigator statute is clear. It seeks to prevent abuse of the system by those persons who persistently and habitually file lawsuits

without reasonable grounds and/or otherwise engage in frivolous conduct in the trial courts of this state. Such conduct clogs the court dockets, results in increased costs, and oftentimes is a waste of judicial resources — resources that are supported by the taxpayers of this state. The unreasonable burden placed upon courts by such baseless litigation prevents the speedy consideration of proper litigation."

{¶ 26} The court in *Timson* appropriately identified the untoward effects of vexatious litigation in depleting judicial resources and unnecessarily encroaching upon the judicial machinery needed by others for the vindication of legitimate rights. In addition, vexatious litigators oftentimes use litigation, with seemingly indefatigable resolve and prolificacy, to intimidate public officials and employees or cause the emotional and financial decimation of their targets. See, *e.g., Procup v. Strickland* (C.A.11, 1986), 792 F.2d 1069; *In re Green* (C.A.D.C.1981), 669 F.2d 779. Such conduct, which employs court processes as amusement or a weapon in itself, undermines the people's faith in the legal system, threatens the integrity of the judiciary, and casts a shadow upon the administration of justice. Thus, the people, through their representatives, have a legitimate, indeed compelling, interest in curbing the illegitimate activities of vexatious litigators.

{¶ 27} The relationship between these goals and the methods employed in R.C. 2323.52 to achieve them is substantial. At its core, the statute establishes a screening mechanism that serves to protect the courts and other would-be victims against frivolous and ill-conceived lawsuits filed by those who have historically engaged in prolific and vexatious conduct in civil proceedings. It provides authority to the court of common pleas to require, as a condition precedent to taking further legal action in certain enumerated Ohio trial courts, that the vexatious litigator make a satisfactory demonstration that the proposed legal action is neither groundless nor abusive. Thus, "[t]he vexatious litigator statute bears a real and substantial relation to the general public welfare because its provisions allow for

the preclusion of groundless suits filed by those who have a history of vexatious conduct." *Timson, supra*, 132 Ohio App.3d at 50, 724 N.E.2d at 464.

{¶ 28} The remaining question under the due process analysis is whether R.C. 2323.52 is unreasonable or arbitrary. In order to make this determination, however, we must necessarily consider whether the statute accomplishes its goals without foreclosing truly legitimate claims. This is where the due-course-of-law and access-to-courts provisions tend to merge and overlap in application. In determining the propriety of a particular method used to restrict or condition the activities of a vexatious litigator, the principles of reasonableness, rationality, and access to courts apply interdependently to frame a single constitutional inquiry, which is whether the challenged procedure is properly tailored to prevent further abuse of court processes without unduly burdening the submission of legitimate claims. See *Smith v. Ohio Dept. of Human Serv.* (1996), 115 Ohio App.3d 755, 686 N.E.2d 320, cited with approval in *State ex rel. Forsyth v. Brigner* (1999), 86 Ohio St.3d 71, 711 N.E.2d 684; *Procup,* 792 F.2d 1069; *In re Green,* 669 F.2d 779.

{¶ 29} R.C. 2323.52 is obviously designed to prevent vexatious litigators from gaining direct and unfettered access to our trial courts. Otherwise, its enactment would have no meaning. Thus, R.C. 2323.52(D)(1) provides that the court of common pleas that declared a person to be a vexatious litigator may enter an order that essentially enjoins that person from engaging the processes of any Ohio trial court without first obtaining the leave of the common pleas court to proceed; and R.C. 2323.52(H) and (I) provide for statewide refusal or dismissal of any pleading or action submitted by the vexatious litigator in the absence of leave to proceed.

{¶ 30} However, the statute is not designed, nor does it operate, to preclude vexatious litigators from proceeding forward on their legitimate claims. Instead, it establishes a screening mechanism under which the vexatious litigator can petition the declaring court, on a case-by-case basis, for a determination of whether any

proposed action is abusive or groundless. Thus, R.C. 2323.52(F) provides that the court of common pleas is precluded from granting leave to the vexatious litigator unless it "is satisfied that the proceedings or application are not an abuse of process of the court in question and that there are reasonable grounds for the proceedings or application."

{¶ 31} Apparently, this was enough to convince Bristow that R.C. 2323.52 "ensures one a right of access to the courts by asking a certain court permission to proceed in another court." It was also enough to persuade the court in *Timson* that, except for R.C. 2323.52(G), the statute provides vexatious litigators an opportunity for remedy at a reasonable time and in a reasonable manner, and also provides them a reasonable substitute for those common-law rights or remedies that may be impaired by its denial of direct access to the courts. *Id.*, 132 Ohio App.3d at 50-51 and 53, 724 N.E.2d at 464 and 466. See, also, *Burgess v. Eli Lilly & Co.* (1993), 66 Ohio St.3d 59, 62-63, 609 N.E.2d 140, 142-143; *Gaines v. Preterm-Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 60, 514 N.E.2d 709, 715-716; *Hardy v. VerMeulen* (1987), 32 Ohio St.3d 45, 47, 512 N.E.2d 626, 628; *Mominee, supra*, 28 Ohio St.3d at 291-292, 28 OBR at 365, 503 N.E.2d at 733-734 (Douglas, J., concurring).

{¶ 32} With regard to R.C. 2323.52(G), the court in *Timson* found this provision unconstitutional under Section 16, Article I because it "completely precludes any appeal from a court's denial of a vexatious litigator's application for leave to proceed with a case." *Id.*, 132 Ohio App.3d at 53, 724 N.E.2d at 466. However, the court never considered the appropriateness or availability of alternative methods of review. In routing all claims brought by a vexatious litigator to a single trial court for preliminary review, R.C. 2323.52 establishes the trial court as the administrative conduit through which the statutory scheme is effectuated. Thus, in this specific situation, under this particular statute, an original action in mandamus is an appropriate means by which the vexatious litigator could effectively challenge arbitrary denials of leave. See *State ex rel. Glass, Molders,*

16

*Pottery, Plastics & Allied Workers Internatl. Union, Local 333, AFL-CIO, CLC v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 157, 159, 609 N.E.2d 1266, 1267.

{¶ 33} Nevertheless, the court of appeals in this case opined that no means of review, whether through mandamus proceedings or direct appeal, could "remedy the wholly vague and arbitrary nature of the underlying determination." In support, the court reasoned that "the vexatious litigator statute vests complete authority to determine the validity of virtually all of a person's statewide legal actions in one trial court," while leaving unresolved "[e]xactly what constitutes 'an abuse of process' * * * [or] what situations might constitute 'reasonable grounds' for leave to proceed." In addition, the statute does not require "any sort of fact finding process" and "there is no requirement that the trial court articulate upon the record whatever factual or legal grounds may have been the basis for its decision to deny leave to proceed." Accordingly, the court concluded, leave could be arbitrarily and summarily denied "upon a formally proper complaint that would ordinarily survive a motion to dismiss under Civ.R. 12(B)(6)."

{¶ 34} While we appreciate these concerns, we do not share them. Considering the nature of the abuse that the statute is designed to remedy, it becomes quite evident that the General Assembly has made a rational policy choice to force the vexatious litigator into a single forum for preliminary review. See, *e.g., Conley v. Shearer* (1992), 64 Ohio St.3d 284, 292, 595 N.E.2d 862, 869. The fact that there is some inherent difficulty in any attempt to define "abuse of process" or "reasonable grounds" in all its particulars does not render the trial court's prefiling determinations vague or arbitrary. See *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 504-505, 715 N.E.2d 1062, 1104-1105. Indeed, it would be anomalous to find these terms too amorphous to direct an inquiry, considering that a "good ground" standard applies to Civ.R. 11 determinations and that abuse of process and malicious civil prosecution are

cognizable torts under Ohio common law. See *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.* (1994), 68 Ohio St.3d 294, 626 N.E.2d 115.

{¶ 35} In addition, we find no relevance in the fact that the statute fails to require the trial court to issue formal findings in denying leave or to conduct any sort of fact-finding process. Regardless of R.C. 2323.52, "*sua sponte* dismissal without notice is appropriate where the complaint is frivolous." *State ex rel. Fogle v. Steiner* (1995), 74 Ohio St.3d 158, 161, 656 N.E.2d 1288, 1292. Besides, "[w]hen a court dismisses a complaint pursuant to Civ.R. 12(B)(6), it makes no factual findings beyond its legal conclusion that the complaint fails to state a claim upon which relief can be granted. Thus, the court does not assume the role of factfinder and has no duty to issue findings of fact and conclusions of law." *State ex rel. Drake v. Athens Cty. Bd. of Elections* (1988), 39 Ohio St.3d 40, 41, 528 N.E.2d 1253, 1254. Certainly, the statute cannot be faulted for failing to impose requirements on a trial court that are not otherwise imposed in the absence of the statute.

{¶ 36} Thus, we conclude that R.C. 2323.52 is not arbitrary or unreasonable, nor does it deny vexatious litigators their constitutional right of access to the courts. Accordingly, we hold that R.C. 2323.52 is constitutional in its entirety under Section 16, Article I of the Ohio Constitution.

C

Separation of Powers

{¶ 37} In his only challenge to the statute itself, Bristow proposes that R.C. 2323.52 usurps judicial power in violation of the Ohio constitutional doctrine of separation of powers and, therefore, is unconstitutional. In support of this proposition, Bristow argues as follows:

"This court has enacted the Ohio Rules of Civil Procedure which govern the dismissals of lawsuits. Thus, as in *Sheward, supra*, the Ohio legislature has once again trampled on this court's authority, as the conduct R.C. 2323.52 seeks to

prevent is already promulgated in the Civil Rules. Moreover, R.C. 2323.51 has been struck down under *Sheward, supra*. R.C. 2323.52 is an extension of that statute."

{¶ 38} Bristow has not identified any Civil Rule governing or related to the dismissal of actions or claims that can be said to stand in conflict with R.C. 2323.52. This court never found R.C. 2323.51 itself unconstitutional in *Sheward* as it was amended in Am.Sub.H.B. No. 350. Instead, we held Am.Sub.H.B. No. 350 unconstitutional under the one-subject rule and, therefore, amended R.C. 2323.51 fell along with the rest of the bill. Moreover, former R.C. 2323.51 had never been declared unconstitutional, and R.C. 2323.52 is not a reenactment of that statute.

{¶ 39} In addition, while the ability to curb frivolous litigation practices is an essential part of the inherent powers of courts to control and protect the integrity of their own processes, *Smith, supra*, 115 Ohio App.3d at 759, 686 N.E.2d at 323, the public also has a definable interest in curtailing the activities of vexatious litigators that transcends the boundaries of judicial concerns and, as a result, is appropriate for legislative enactment.

{¶ 40} Accordingly, we hold that R.C. 2323.52 does not violate the Ohio doctrine of separation of powers.

III

Constitutionality of Trial Court's August 20, 1998 Order

A

Procedural Due Process

{¶ 41} In his second proposition of law, Bristow maintains that "[t]he mail restriction court order dated August 20, 1998 is unconstitutional as it violates procedural due process pursuant to Ohio Administrative Code 5120-9-18." Bristow argues that several aspects of the trial court's order conflict with various provisions of Ohio Adm.Code 5120-9-18 governing institutional restrictions on an inmate's outgoing mail.

**{¶ 42}** Mayer contends that "[t]he implementation order at issue does not violate Bristow's due process rights because no protected liberty interest has been conferred upon him by the institutional regulations regarding his mail privileges." Relying on *Hewitt v. Helms* (1983), 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675, and *Sandin v. Conner* (1995), 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418, Mayer further contends that the regulations cannot be used as a source of a liberty interest in outgoing prison mail because they "do not even remotely concern Bristow's freedom from restraint" and "serve only to provide the [Department of Rehabilitation and Correction] with a permissive, nonmandatory procedural guideline for curbing inmate abuses of the prison mail system." In addition, Mayer asserts that the trial court's order "does not violate or conflict with the OAC regulations" and, in any event, "Bristow received all the process due him when" he was declared a vexatious litigator.

**{¶ 43}** We find no merit to Bristow's argument, since he is claiming nothing more substantial or worthy of protection as a liberty interest than a right to exploit an institutional mail system for vexatious purposes. Depriving him of this "deprives him of nothing at all, except perhaps the punishment of [Civ.R.] 11 sanctions." *Lewis v. Casey* (1996), 518 U.S. 343, 353, 116 S.Ct. 2174, 2181, 135 L.Ed.2d 606, 619, fn. 3.

**{¶ 44}** Accordingly, we hold that the trial court's August 20, 1998 order does not violate Bristow's procedural due process rights under the Ohio or United States Constitutions.

B

Access to Courts, Freedom of Expression, and the "Any Court" Restriction

**{¶ 45}** In his third proposition of law, Bristow asserts that "[t]he trial court's mail restriction court order dated August 20, 1998 is unconstitutional as it denied and is denying appellee access to the courts."

{¶ 46} In his fourth proposition of law, Bristow asserts that "[t]he trial court's mail restriction court order dated August 20, 1998 violates appellee's constitutional right to the freedom of expression."

{¶ 47} Given the nature of Bristow's supporting arguments, we reject these propositions of law for the reasons already stated in Parts IIB and IIIA of this opinion.

{¶ 48} However, embodied within these propositions is the argument that the trial court's order impermissibly restricts Bristow's access to courts other than the Ohio trial courts mentioned in the statute. The trial court's August 20, 1998 order provides:

"It is further ORDERED that any mail from Lonny Lee Bristow that is addressed to *any court* other than to Judge Nelfred G. Kimerline, as stated above, shall be forwarded to this Court for a determination as to its disposition." (Emphasis added.)

{¶ 49} The court of appeals majority found that "basic principles of federalism and sovereignty prohibit the trial court from relying upon an Ohio statute to impede appellant's actions in any courts other than Ohio's own." Similarly, Judge Hadley, dissenting, also found that "the trial judge in this matter has exceeded his authority [in this regard]. R.C. 2323.52(D)(1) reveals that a common pleas court which adjudicates a person to be a vexatious litigator may only enter an order prohibiting that person from instituting legal proceedings in the court of claims or in a court of common pleas, municipal court, or county court. Thus, the order of the Crawford County Court of Common Pleas is overbroad because it prohibits a vexatious litigator from instituting a legal proceeding or action in a court other than those enumerated in the statute."

{¶ 50} However, Mayer asserts:

"Bristow himself has made this Order necessary. When forbidden from filing in the Richland County or Northern District of Ohio (where venue was

proper), he began to file in other Courts instead.  When forbidden from filing in other Ohio Courts, he sued in out-of-state Courts.  When forbidden from filing in his name, he uses other names.  It is *his* action which requires this Order to be exactly as broad as it is."  (Emphasis *sic*.)

{¶ 51} Pointing out that "[t]housands of jurisdictions exist from which Bristow can choose," Mayer proposes that the trial court's order should be considered a valid, necessary, and unavoidable exercise of its "inherent authority and duty * * * to control abuses of the judicial process."

{¶ 52} We are fully convinced that the order issued by the trial court was absolutely necessary, in every sense of the word, to control Bristow's seemingly innate proclivity toward vexatious litigation.

{¶ 53} We also doubt that any court outside Ohio would object to being spared the time and expense of dealing with Bristow's pestilent litigation practices. As the court explained in *Bristow v. Steirhoff* (Feb. 15, 1995), N.D.Ohio No. 5:93 CV 2698, unreported:

"The uncontroverted evidence in the record establishes that Bristow has filed thirty-nine (39) lawsuits in this Court against various defendants without paying any fees or costs due to his *in forma pauperis* status.  Most of these actions are directed at Richland County Officials and employees, but others include victims of his telephone harassment. * * * Bristow used filing complaints as a source of amusement to pass his time in jail at the expense of the defendants and the taxpayers.

" * * *

"Mr. Bristow's new found weapon — filing meritless claims — has resulted in exorbitant expense to the named defendants and the taxpaying public.  Through the abuse of the *in forma pauperis* device, Bristow attempts to make a mockery of the judicial system.

" * * *

22

"Bristow * * * has learned how to circumvent the pre-screening process. Although he knows he will never win a judgment, he gets revenge each time the defendants pay their attorney fees and court costs. For the cost of a stamp, Bristow has found a way to inflict his revenge on the defendants and the general taxpaying public. The only effective and fair way to curb his abuse is to take away the procedural privilege that he has twisted into a weapon."

{¶ 54} Nevertheless, necessity and propriety are not always coextensive. Mayer has cited no authority, and we certainly have not found any, that purports to authorize a single state common pleas court to control the processes of every state and federal court throughout the United States. Thus, while we sympathize with Mayer and the trial court under these exceedingly difficult circumstances, we find no authority to support this order, as it exceeds the scope of the court's inherent powers.

{¶ 55} Accordingly, we affirm the decision of the court of appeals on this particular issue.

IV

Conclusion

{¶ 56} Based on all of the foregoing, we hold that R.C. 2323.52 is constitutional in its entirety. We hold also that R.C. 2323.52 grants authority to the court of common pleas to order a vexatious litigator to obtain its leave before proceeding in the Court of Claims, a court of common pleas, municipal court, or county court. A court of common pleas has no authority under R.C. 2323.52, or pursuant to its own inherent powers to prevent abuse of the judicial process, to restrict the activities of a vexatious litigator in courts other than these specifically enumerated Ohio trial courts. The trial court's order of August 20, 1998, is valid and constitutional in all respects, except to the extent that it restricts Bristow's access to courts other than those Ohio trial courts specifically enumerated in the statute.

{¶ 57} Accordingly, the judgment of the court of appeals is reversed in part and affirmed in part, and the cause is remanded to the trial court to modify its August 20, 1998 order consistent with this opinion.

*Judgment reversed in part,*
*affirmed in part*
*and cause remanded.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY and PATTON, JJ., concur.

PETER B. ABELE, J., concurs in part and dissents in part.

PFEIFER, J., dissents.

JOHN T. PATTON, J., of the Eighth Appellate District, sitting for COOK, J.

PETER B. ABELE, J., of the Fourth Appellate District, sitting for LUNDBERG STRATTON, J.

_____

**PETER B. ABELE, J., concurring in part and dissenting in part**.

{¶ 58} I concur in large part with the well-reasoned majority opinion. I agree that R.C. 2323.52 does not deprive litigants of meaningful access to Ohio's courts. Sadly, the facts and circumstances surrounding the instant case amply illustrate the need for this type of legislation.

{¶ 59} I disagree, however, with that portion of the majority's holding concerning R.C. 2323.52(G), which provides that no appeal shall lie from a court's denial of an application for leave to proceed with a case. I believe that the denial of a litigant's right to appeal runs afoul of Section 16, Article I of the Ohio Constitution. See, also, App.R. 3; *Moldovan v. Cuyahoga Cty. Welfare Dept*. (1986), 25 Ohio St.3d 293, 25 OBR 343, 496 N.E.2d 466; and *Cent. Ohio Transit Auth. v. Timson* (1998), 132 Ohio App.3d 41, 724 N.E.2d 458. When a state provides an appellate review process, the procedures used to implement appellate review must comply with the constitutional dictates of due process and equal protection. *Atkinson v. Grumman Ohio Corp.* (1988), 37 Ohio St.3d 80, 84, 523

N.E.2d 851, 855. Thus, in this limited regard, I believe that the statute denies litigants the right to legal redress of injuries.

———————————

**PFEIFER, J., dissenting**.

{¶ 60} I join Judge Abele's dissent with respect to R.C. 2323.52(G).

{¶ 61} The intent behind the vexatious litigator statute is laudable. Our system of justice will cease to serve a useful function if it is overwhelmed with meritless lawsuits and there is no question that the vast majority of the suits filed by Bristow are meritless.

{¶ 62} Section 16, Article I of the Ohio Constitution provides: "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." The Constitution does not differentiate between those who have filed frivolous lawsuits in the past and those who haven't. I am concerned that a valid complaint may not receive the attention it deserves simply because it was filed by a vexatious litigator. Our courts are open to all who have been injured whether or not they have frivolously cried "Wolf" too many times in the past. I therefore dissent.

———————————

*Isaac, Brant, Ledman & Teetor, Mark Landes, Terri B. Gregori* and *Lance Chapin*, for appellant.

*Lonny Lee Bristow, pro se*.

*Betty D. Montgomery,* Attorney General, *Judith L. French* and *Elizabeth Luper Schuster,* Assistant Attorneys General, for intervenor Attorney General Betty D. Montgomery.

*Burton H. Wolfe*, urging affirmance for *amicus curiae,* Burton H. Wolfe.

*Laurence A. Neuton*, urging affirmance for *amicus curiae,* Laurence A. Neuton.