OPINION
{¶ 1} The instant appeal stems from a final judgment of the Mahoning County Court of Common Pleas. Appellant, Samuel L. Buoscio, seeks the reversal of that court's basic decision to grant summary judgment against him in regard to all pending claims in the underlying civil action.
 {¶ 2} In September 1998, appellant initiated the underlying action by filing a multi-claim complaint against appellee, Ruby M. Macejko. At that time, appellant was incarcerated at the Mansfield Correctional Institution, based upon a prior conviction for manslaughter. However, even though he remained an inmate at the prison throughout the entire trial proceedings, appellant represente d himself at all times in this matter.
 {¶ 3} In his complaint before the trial court, appellant alleged the following facts: (1) in March 1990, he agreed to give the sum of $800 to appellee so that she could settle a debt she owed to a local funeral home; (2) at the time he paid the funeral bill, appellee willingly executed a promissory note in which she agreed to reimburse him for the funds in question by May 30, 1990; and (3) throughout the intervening eight years, appellee had continuously refused to pay the debt. Based on these allegations, appellant raised claims sounding in breach of contract, fraud, and negligence.
 {¶ 4} In support of his first claim, appellant attached to his complaint a purported copy of a promissory note appellee had allegedly executed. The body of the note contained the simple statement that appellee had promised in March 1990 to pay appellant $800 "for value received." In addition, the document contained the purported signatures of appellee and Attorney Gene Donofrio. According to appellant, the latter individual had witnessed the execution of the note.
 {¶ 5} In conjunction with her answer to the complaint, appellee immediately submitted a motion to strike the complaint under Civ.R.12(F). As the grounds for this motion, she essentially argued that appellant's three claims were completely unfounded because the document upon which the claims were based, i.e., the promissory note, was a forgery. In the same vein, appellee also immediately filed a discovery request for appellant to produce the original copy of the promissory note. In response, appellant submitted a request for appellee to produce the original note. As the basis for his separate request, appellant asserted that appellee had kept the original note at the time of its execution in March 1990.
 {¶ 6} Ultimately, each party filed multiple motions in relation to the production of the alleged original note, including competing motions to compel discovery. Despite the fact that the location of the original note was vehemently contested by the parties, the trial court never issued a judgment concerning the majority of the discovery motions. Moreover, neither side ever produced the document i n question.
 {¶ 7} Two months following the initiation of the action, appellee filed a counterclaim in which she requested that appellant be declared a vexatious litigator under R.C. 2323.52. As the factual basis for her claim, appellee alleged that: (1) since 1993, appellant had filed fourteen separate civil actions against appellee in various trial courts throughout the state; (2) in 1998 alone, appellant had brought two civil actions in which he had alleged that appellee had failed to pay a debt owed to him; (3) each of the actions in question had ultimately been dismissed by the trial courts; and (4) appellant had filed the actions merely to embarra ss and harass her.
 {¶ 8} After moving to dismiss the counterclaim under Civ.R. 12(B)(6), appellant then moved the trial court for summary judgment as to the three claims in his complaint. In the latter motion, appellant essentially argued that he was entitled to a judgment in the amount of $800 because appellee had breached the terms of the promissory note. In support of this argument, appellant attached to his summary judgment motion his own affidavit. As part of this latter document, he averred that: (1) the assertions he had made in his complaint concerning the existence of the debt itself and the promissory note were true; and (2) he was unable to produce the original note because appellee h ad kept it upon its execution in 1990.
 {¶ 9} In her brief in opposition to the summary judgment motion, appellee maintained that summary judgment could not be granted in appellant's favor because two genuine factual disputes existed in the case. Specifically, appellee contended that there was a dispute as to whether she had ever reached an agreement with appellant regarding the funeral debt and whether she had signed the alleged promissory note. To establish the disputes, appellee submitted two affidavits with her brief. In her own affidavit, appellee averred that she had never promised to pay appellant for the debt at issue, and that she had never seen, let alone executed, the alleged note. In his separate affidavit, Attorney Donofrio averred that, although he had represented appellant in certain matters during the early 1990's, he could not recall ever participating in the preparation and execution of the alleged note.
 {¶ 10} The trial court never issued a determination as to the merits of appellant's motion for summary judgment. Three months after responding to appellant's motion, appellee filed her own motion for summary judgment as to all pending claims in the case. In relation to appellant's three claims, appellee again maintained that she was entitled to prevail because the promissory note which appellant had attached to his complaint was a forgery. In support of this basic argument, she asserted that she had been able to locate two documents which she and Attorney Donofrio had signed in 1993. Based on this, she theorized that appellant had obtained copies of the two documents and had somehow superimposed the signatures from those two documents onto the promissory note.
 {¶ 11} To support her theory, appellee attached to her summary judgment motion the report and affidavit of Harold F. Rodin, a hand writing expert. In his affidavit, Rodin stated that, after conducting certain tests on the two 1993 documents and the alleged promissory note, he had concluded, to a reasonable degree of scientific certainty, that appellant had "created" the promissory note by using the two signatures from the 1993 documents. In his report, Rodin asserted that appellant could have accomplished such a feat "either by a copy machine manipulation, or by a computer, `cut and pa ste' manipulation."
 {¶ 12} In regard to appellee's own counterclaim, she contended that appellant should be declared a vexatious litigator because he had not acted in good faith in filing the instant case. As to this point, appellee again referred to Rodin's assertion that the promissory note had been fabricated. In addition, appellee argued that the "vexatious litigator" label was warranted because appellant had filed fifteen separate lawsuits against her since 1993, and that each of these prior cases had resulted in a judgment in her favor. As to this second point, appellee did not refer to an y supporting evidentiary materials.
 {¶ 13} Three days after appellee had filed the foregoing motion, appellant submitted his second motion for summary judgment. Besides restating the same basic arguments he had raised in his first motion, appellant presented a second affidavit in which he again gave his version of the events in 1990; i.e., he averred that, even though appellee was liable for the debt to the funeral home, he had agreed to pay it because she promised to pay him back within three months. One week later, appellant then filed his response to appellee's summary judgment motion. Although appellant briefly attempted to address the merits of appellee's counterclaim, the majority of his response again pertained to the merits of his own three claims. Moreover, appellant did not submit any new evidentiary materials with his response.
 {¶ 14} Approximately fourteen months after appellant had submitted his response, the trial court issued a one-sentence judgment in which it simply granted appellee's motion for summary judgment. However, this judgment did not set forth any specific ruling on the four pending claims and did not contain any specific determinati on on the "vexatious litigator" issue.
 {¶ 15} In November 2000, the trial court rendered a new, detailed judgment in which it declared appellant to be a vexatious litigator under R.C. 2323.52(B). Although the court referred to the prior cases appellant had allegedly filed in the Mahoning County Court of Common Pleas, its analysis focused upon appellant's conduct in the instant case:
 {¶ 16} "[Appellee] had initially provided this Court with her own affidavit and that of Attorney Gene Donofrio that denied their participation in the execution of the note. She later provided this Court with an expert opinion relating to the authenticity of the note upon which [appellant] bases his claim. While, under normal circumstances, questions of fact could remain, none of the questions here are `genuine,' as envisioned by Civ.R. 56. Even after viewing the evidence in a light most favorable to [appellant], reasonable minds can come to but one conclusion and that conclusion is that [appellant's] claim is entirely without merit. Wit hout an agreement, there can be no breach.
 {¶ 17} "[Appellant] has submitted a forged document as the basis for his claim against [appellee]. This is not simply a situation where an individual who lacks legal training has made mistakes in the prosecution of his claim. This is a case where an individual has repeatedly proceeded in bad faith with full knowledge that his claims are baseless and he has even went to the effort of fabricating documents in an attempt to bolster his frivolous claim and mislead the courts. Nothing could be more repugnant to the search for truth and justice or detrimental to judicial economy. His conduct `serves merely to harass or maliciously injure' [appellee] and he has `habitually, persistently, and without reasonable grounds engaged in vexatious conduct in civil actions.'"
 {¶ 18} In light of its finding that appellant was a vexatious litigator, the trial court ordered that he was prohibited from bringing any new proceeding in the Mahoning County Court of Common Pleas without first obtaining leave from that court to do so. The trial court also expressly concluded that, since appellant could no longer maintain legal actions on his own, the dismissal of the entire comp laint in the instant case was warranted.
 {¶ 19} In now appealing the foregoing judgments, appellant has assigned th e following as error:
 {¶ 20} "The trial court erred and abused its discretion when sustaining [appellee's] motion for summary judgment."
 {¶ 21} As a preliminary matter, this court would note that appellant filed his notice of appeal immediately after the issuance of the trial court's one-sentence judgment in June 2000. As was noted above, that particular judgment only granted appellee's motion for summary judgment. That is, not only did the judgment lack a specific statement as to the final disposition of the pending claims, but it also lacked any declaration concerning appellant's status under R.C. 2323.52. Therefore, since the June 2000 judgment did not have sufficient verbiage to inform both parties of their respective rights and liabilities as a result of the decision to grant summary judgment, it did not constitute a final order. See McClain v. McClain (Feb. 12, 1999), 11th Dist. No. 98-P-00 02, 1999 Ohio App. LEXIS 448.
 {¶ 22} However, the second judgment issued by the trial court in November 2000 did contain a sufficient statement of the parties' rights and liabilities to be a final appealable order pursuant to R.C.2505.02(B)(1). At the time that second judgment was rendered, appellant's notice of appeal regarding the June 2000 judgment was still pending before this court. Therefore, because appellant's notice of appeal was filed prematurely before the final judgment in the case was rendered, this court is required under App.R. 4(C) to treat his notice as having been filed immediately after the issuance of the November 2000 judgment. In turn, this means that the merits of the November 2000 judgment are properly be fore us in the instant appeal.
 {¶ 23} Under his sole assignment, appellant seeks to challenge the propriety of the trial court's conclusion that the three claims in his complaint had no basis in fact. Appellant essentially argues that the granting of summary judgment in appellee's favor was improper because the affidavits he submitted during the summary judgment exercise were legally sufficient to raise a factual dispute as to whether the promissory note was authentic. In light of this argument, he further contends that if his evidentiary materials were sufficient to show that his claims had some factual basis, it was then improper for the trial court to declare him a vexatious litigator.
 {¶ 24} At the outset of our discussion, this court would indicate that, although the bulk of the trial court's analysis focused on the authenticity of the promissory note, its ultimate decision to "dismiss" the claims in appellant's complaint was based on its application of R.C.2323.52, the vexatious litigator statute. As a general proposition, this statute gives a court of common pleas the authority to limit a person's access to various trial courts in the state when certain circumstances exist. Specifically, R.C. 2323.52(D) provides that if a common pleas court finds that a person is a vexatious litigator, the court can prohibit him from bringing any new legal action, or continuing any pending legal action, unless he has obtained leave from that court to go forward. This "leave" requirement allows a common pleas court to screen the merits of the person's complaint so that a frivolous case can be halted even before it officially begins. This procedure not only serves the purpose of protecting private citizens from having to defend frivolous actions, but also helps to preserve judicial resources. SeeMayer v. Bristow (2000), 91 Ohio St.3d 3, 13.
 {¶ 25} However, before the "leave" requirement of R.C. 2323.52(D) can be imposed, the common pleas court must make a specific finding that the person in question satisfies the definition of a vexatious litigator. This definition is delineated in R.C. 2323.52(A)(3), which states that such a litigator is "any person who has habitually, persistently, and without reasonable grounds engaged in vexatious conduct in a civil action or actions, * * *." In turn, the term "vexatious conduct" is defined in R.C. 2323.52(A)(2)(a) to include any behavior which "obviously serves merely to harass or maliciously injure another party to the civil action."
 {¶ 26} As the wording of R.C. 2323.52(A)(3) readily indicates, the finding that a person is a vexatious litigator can be based upon his behavior in a single civil action or multiple civil actions. In the instant matter, the trial court's "vexatious litigator" finding was based primarily on appellant's conduct in one case; i.e., the present action in which appellant had sought relief for the alleged unpaid debt. As was noted above, the trial court found that appellant had acted in bad faith in bringing the instant case because his complaint was predicated on a forged document.
 {¶ 27} However, our review of the entire record before us shows that, in finding that the promissory note was a forgery, the trial court improperly weighed the parties' respective evidentiary materials. As to this point, we would emphasize that, prior to the issuance of the trial court's June 2000 judgment, appellant had submitted with his own summary judgment motions two properly-framed affidavits. In both affidavits, appellant expressly averred that the document he had attached to his complaint was a true and accurate copy of the promissory note appellee had executed. Similarly, both affidavits contained the averment that appellee had promised to pay him the sum of $800 if he would pa y the funeral debt.
 {¶ 28} Despite the existence of appellant's affidavits, the trial court still found that there had never been an agreement between the parties. After referring to the three affidavits appellee had submitted, including the affidavit of the handwriting expert, the trial court held in its November 2000 judgment that a reasonable person could only conclude from the various affidavits that appellant had forged the promissory note and that, as a result, his entire complaint had no merit. The trial court further indicated that, even though the materials would be sufficient to create a factual dispute under "normal" circumstances, there were no genuine factual issues to try in this case.
 {¶ 29} Although the trial court did not expressly indicate what it considered the abnormal circumstances to be, it is obvious from the context of the November 2000 judgment that the court was referring to the fifteen prior cases appellant had allegedly brought against appellee. That is, the trial court implicitly found that, in light of the fact that appellant's prior fifteen actions had allegedly been baseless, the statements in his affidavits could be disregarded as completely lacking in any credibility. In regard to this point, this court would indicate that, while we would agree that the existence of fifteen previous baseless actions would be relevant to a credibility determination at trial, it cannot be considered in reviewing evidentiary materials f or purposes of summary judgment.
 {¶ 30} It is well established under Ohio law that summary judgment can only be granted when, inter alia, there is no genuine issue of material fact remaining to be litigated in the case. Johnson v. AllstateIns. Co., 11th Dist. No. 2001-T-0127, 2002-Ohio-7156. When determining whether material factual disputes still exist, a trial court must consider all evidentiary materials in a manner most favorable to the nonmoving party. Monaco v. Red Fox Gun Club, Inc. (Dec. 28, 2001), 11th Dist. No. 2000-P-0064, 2001-Ohio-4040. Furthermore, in reviewing the evidentiary materials, the court essentially can only make a sufficiency determination; i.e., the court cannot substitute itself for a jury by making a credibility determination. Williams v. Am. Mut. Life Ins. Co.
(Dec. 6, 1996), 11th Dist. No. 96-T-5478, 1996 Ohio App. LEXIS 5512.
 {¶ 31} In concluding in the instant case that the promissory note appellant had attached to his complaint was a forgery, the trial court did not follow the foregoing basic principles of summary judgment. Appellant's two affidavits were legally sufficient by themselves to raise a factual dispute as to whether the note was authentic and whether appellee owed a debt to appellant. As to the authenticity issue, this court would emphasize that it was unnecessary for appellant to submit a competing affidavit of a different expert regarding the validity of the signatures on the note. Although a jury at trial might ultimately find the testimony of appellee's handwriting expert to be more believable, appellant's averment that appellee executed the promissory note creates a j ury issue as to whether the note is valid.
 {¶ 32} As was noted above, in deciding to declare appellant a vexatious litigator in light of his conduct in the instant case, the trial court relied primarily upon its finding that the promissory note was a forgery. Pursuant to the foregoing discussion, we conclude that the trial court erred in making this specific finding in the context of a summary judgment exercise. Accordingly, the decision to declare appellant a vexatious litigator could not be based solely on his conduct in the instant case.
 {¶ 33} Under R.C. 2323.52(A)(3), a person's behavior in prior civil actions can also form the basis for declaring him a vexatious litigator. In the instant case, appellee asserted in his motion for summary judgment on her counterclaim that appellant had brought fifteen prior actions against over the past five years. Moreover, as part of its November 2000 judgment, the trial court referred to this assertion as being supportive of its decision on the counterclaim.
 {¶ 34} However, our review of appellee's motion before the trial court readily shows that she did not submit any evidentiary materials to support her assertion concerning the alleged prior actions. In considering similar situations in which a person has been found to be a vexatious litigator, the courts of this state have held that summary judgment cannot be granted on a claim under R.C. 2323.52 when the moving party has failed to submit any proper documentation concerning the alleged prior actions between the parties. See, e.g., Catalano v. Pisani (1999),134 Ohio App.3d 549, 555. Furthermore, since the alleged prior actions between appellant and appellee would have constituted distinct proceedings from the instant case, the trial court did not have the authority to take judicial notice of the prior actions. DiversifiedMortgage investors, Inc. v. Athens Cty. Bd. of Revision (1982),7 Ohio App.3d 157. Accordingly, summary judgment could not have been granted on appellee's counterclaim solely upon her assertion as to the e xistence of the prior actions.
 {¶ 35} Pursuant to the foregoing analysis, this court holds that the nature of the parties' evidentiary materials was such that summary judgment was not warranted on appellee's counterclaim under R.C. 2323.52. In turn, we further hold that, since the trial court erred in declaring appellant to be a vexatious litigator, it was also improper to dismiss his entire complaint under R.C. 2323.52(D). Finally, we would indicate that, although the trial court did not grant summary judgment against appellant as to the three claims in his complaint, such a decision would have likewise been improper because there were factual disputes regarding m aterial issues in those claims.
 {¶ 36} As the trial court erred in granting summary judgment in favor of appellee, appellant's sole assignment of error has merit. It is the order of this court that the trial court's judgments of June 6, 2000 and November 9, 2000 are reversed, and the case is hereby remanded to the trial court for further proceedings consistent with this opinion.
DONALD R. FORD, P.J., Eleventh Appellate District, sitting by assignment ROBERT A. NADER, J., Eleventh Appellate District, sitting by assignment, concur.