JOURNAL ENTRY and OPINION
This appeal concerns ongoing litigation among members of the Grogan family and their family business, T.W. Grogan Co., Inc. ("the company"). The three consolidated actions filed below arose as a result of differences of opinion in the disposition of company assets and the role certain family members would play in running the company. The primary issues on appeal are whether the court erred by denying the right of certain siblings to intervene as individuals in another sibling's request that a receiver be appointed to safeguard the company, and whether the three actions were incorrectly consolidated.
The company is a closely-held commercial real estate business whose primary assets are two Cleveland office buildings. The shareholders and members of the board of directors (the "board") were Timothy W. Grogan and his family trust (because their interests are aligned, we will refer to them collectively as "Grogan"), Mark Grogan, Mary Molly Kilfoyle (nee Grogan), Ann Gross (nee Grogan), and Donald Grogan. the father of the four siblings. We will sometimes refer to Kilfoyle, Gross and Mark Grogan as "the sibling directors.
In 1995, Grogan and the company terminated litigation between them by entering into an employment contract whereby the company employed Grogan as president and chairman of the board, with certain restrictions on the board's ability to terminate his employment.
Grogan and the other members of the board soon began to clash over the management of the company. Although it is always perilous to generalize in complicated litigation like this, we think it fair to summarize the relative positions of the parties as follows: the sibling directors believed Grogan excluded them from daily operations so he could exercise complete control over the company for his own personal gain, without regard for their best interests as shareholders and without accounting for or justifying his actions; Grogan, on the other hand, believed the sibling directors were officious intermeddlers who lacked any expertise in the real estate business, used the company as their own personal cash cow, and wished to liquidate the company for personal gain without regard to the true-value of the assets held by the company.
Sometime in April 1998, the board agreed to liquidate the company's holdings. This liquidation would encompass "substantially all" of the company's assets. Grogan apparently believed that the other directors were willing to accept a price that was $1 million less than could be obtained for the properties, and refused to agree to the sale. The other siblings believed that Grogan was purposely delaying the sale, taking company files and refusing to implement the financial plan the parties had agreed to when settling the previous litigation.
Matters came to a head at a board meeting held on June 1, 1998. The board voted to remove Grogan as president and chairman of the board. It retained him in the company at his same salary, but limited his duties.
On June 17, 1998, Grogan filed suit in CV 356842, alleging that the company and his three siblings breached his employment contract by terminating him without complying with the terms of the employment contract. He further alleged that the board breached its fiduciary duties by discharging him in the manner that it did. This case was assigned to Judge Griffin.[1]
In August 1999, the company filed suit in CV 388798 seeking an appraisal of the fair value of Grogan's stock pursuant to R.C. 1701.85. The complaint alleged that in April 1999, the board adopted a resolution to sell the two Cleveland properties, assets which represented "substantially all" of the company's assets. Grogan filed a counterclaim asking the court to appoint a receiver to oversee the company. The complaint asked the court to determine the value of Grogan's shares as a dissenting shareholder. This case was assigned to Judge Calabrese.
On September 24, 1999, Grogan filed CV 392378, in which he asked the court to appoint a receiver to oversee the disposition of the company's assets. The complaint essentially asked for the same relief that had been requested in Grogan's counterclaim in CV 388798. This case was assigned to Judge Villanueva.
On September 27, 1999, Grogan filed motions in all three cases asking that they be consolidated on Judge Calabrese's docket. Judge Calabrese granted the motion to consolidate on October 19, 1999, and Judges Griffin and Villanueva entered separate orders transferring CV 356842 and CV 392378, respectively, to Judge Calabrese's docket. Grogan subsequently dismissed his counterclaim in CV 388798 (having asserted the same claim for relief in CV 392378), and the sibling plaintiffs dismissed the remainder of CV 388798.[2]
On October 7, 1999, Kilfoyle, Gross and Mark Grogan filed a motion seeking permission to intervene in CV 392378. They argued that Grogan's motion for the appointment of a receiver would adversely affect their rights as the company's majority shareholders, would replace them as directors and would impair their interest in controlling the company. The motion also asked the court to dismiss Grogan's complaint for the appointment of a receiver on grounds that Grogan could not satisfy the jurisdictional requirements for the appointment of a receiver under R.C.1701.89. Judge Calabrese denied both motions and scheduled for hearing Grogan's request for the appointment of a receiver.
In two separate motions (one by Kilfoyle; the other by Gross and Mark Grogan), the sibling directors asked the court to stay the scheduled hearing on the appointment of a receiver, reverse all post-consolidation orders by Judge Calabrese, transfer the consolidated cases back to Judges Griffin and Villanueva and, finally, asked Judge Calabrese to recuse himself on grounds that the case originally filed with him had been completely dismissed. The motions were denied and the sibling defendants collectively appealed.
 I
The first question we must address is whether the omnibus order denying motions to stay proceedings, reverse previous rulings, recuse and transfer is final and appealable pursuant to R.C. 2505.02. Grogan maintains that none of the individual orders contained in the journal entry are final and appealable. The sibling directors maintain that each subpart of the order in effect determines the action and denies them a meaningful or effective remedy by an appeal.
 A
A court of appeals only has jurisdiction over orders that are both final under Civ.R. 54(B) and appealable under R.C. 2505.02. See ChefItaliano Corp. v. Kent State University (1989), 44 Ohio St.3d 86, syllabus.
R.C. 2505.02 provides:
 (B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
 (1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;
 (2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;
 (3) An order that vacates or sets aside a judgment or grants a new trial;
 (4) An order that grants or denies a provisional remedy and to which both of the following apply:
 (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
 (b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims and parties in the action.
 (5) An order that determines that an action may or may not be maintained as a class action.
The first part of the motion we consider is whether the court's refusal to stay proceedings constitutes a provisional remedy under R.C.2505.02(B)(4).
A "provisional remedy" means "a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of a privileged matter, or suppression of evidence." See R.C. 2505.02(A)(3). None of the motions raised by the sibling directors would qualify as a provisional remedy under R.C.2505.02(A)(3).
In Sorg v. Montgomery Ward Co., Inc. (Dec. 17, 1998), Erie App. No. E-98-057, unreported, the Sixth District Court of Appeals held that an order granting a stay of a court action to non-bankrupt parties pending a determination of the bankruptcy of a separate party is a proceeding ancillary to the action.
The basis of the court's decision in Sorg is unclear to us. The court cited to the common definition of the word "ancillary" as meaning a proceeding "attendant upon or which aids another proceeding considered as a principal." Accepting that definition, we fail to see how a stay order could be construed as attendant upon or aiding a principal proceeding. A stay, by definition, is the cessation of activity in the court. If nothing is happening, it stands to reason that no action could be taken which would aid the principal proceeding. More importantly, the cessation of activity means that no "remedy" could possibly be granted for nothing is determined.
The Sixth District considered a stay order akin to a preliminary injunction, but we fail to see that connection. An order granting a preliminary injunction is truly a remedy, as it grants affirmative relief. The better view is to analogize a stay order to a temporary restraining order. A temporary restraining order is meant to preserve the status quo pending resolution of the underlying matter — it is not considered a remedy.
But whether or not we agree with Sorg, we have held that a court's refusal to grant a motion to stay proceedings is not a provisional remedy because no rights "will be irretrievably lost by the denial of a delay in the proceedings." Cleveland v. Zakaib (Oct. 12, 2000), Cuyahoga App. Nos. 76928-76930, unreported. This is because the party complaining about the denial of a stay has an effective remedy by way of appeal. Id.
The court's order denying the sibling director's motion to stay proceedings is not a provisional remedy. This being the case, the order denying the stay could not be an appealable order under R.C.2505.02(B)(4).
 B
The second aspect of the motion was a request for the court to reverse rulings." The basis of this part of the motion is premised on the assumption that Judge Calabrese's incorrectly decided to consolidate the cases because Judge Griffin should have ruled on the motion.
Without touching on the merits on Judge Calabrese's ruling, we note that a motion to "reverse rulings" is nothing more than a motion for reconsideration. While motions for reconsideration filed after the entry of judgment are nullities, see Pitts v. Dept. of Transportation (1981),67 Ohio St.2d 378, paragraph one of the syllabus, there is no rule that prevents a party from asking the court to reconsider an interlocutory ruling. See Id., at fn.1.
But because the motion for reconsideration necessarily arose in the context of an interlocutory order (otherwise it would be a nullity), that order would not, by definition, be appealable because it does not determine the action as to the sibling directors. Any appeal from the court's interlocutory refusal to reconsider its previous rulings is not a final appealable order.
 C
The third aspect of the motion was the sibling director's request for Judge Calabrese to recuse himself on grounds that he erroneously decided to consolidate on his docket cases before Judges Griffin and Villanueva.
A court of appeals does not have authority to pass upon the disqualification of a trial court judge, or to void a judgment on that basis. See Beer v. Griffith (1978), 54 Ohio St.2d 440, 441; Sims v. Sims
(Jan. 13, 2000), Cuyahoga App. No. 74425, unreported. The chief justice of the Ohio Supreme Court has the sole authority to disqualify a judge. See R.C. 2701.03. That code section requires the party seeking the disqualification of a judge to file an affidavit of prejudice with the chief justice as soon as possible after the incident giving rise to the claim of prejudice. In re Disqualification of Krichbaum (1997),81 Ohio St.3d 1205.
The sibling directors' failure to file an affidavit of prejudice leaves us with a court order that is not appealable because we have no authority to consider any questions about the court's refusal to recuse itself. SeeState v. Ulis (Feb. 23, 2001), Lucas App. No. L-00-1196, unreported.
 D
Lastly, the sibling directors maintain the court erred by failing to transfer the cases back to the originally assigned judges.
An order transferring a case from one judge within a division of the court of common pleas to a judge within another division of the court of common pleas is not considered to be final, appealable orders. The order does not occur in a special proceeding, determine the action or otherwise prevent a judgment. See Legg v. Fuchs (Nov. 2, 2000), Cuyahoga App. No. 76406, unreported; Duryee v. Rogers (Dec. 16, 1999), Cuyahoga App. No. 74963, unreported (transfer of case from one county court of common pleas to a different county court of common pleas is not a final, appealable order)
The same reasons for finding no final, appealable orders in transfers of cases either inter-division or inter-county apply with equal force to intra-division transfers between judges of a court of common pleas. The action is not decided, a judgment is not prevented, and a transfer is not a special proceeding. We find the court's refusal to grant the motion to transfer the cases back to the originally assigned judges is not a final, appealable order.
 E
In summary, we find that no appeal will lie from any aspect of the court's refusal to grant the sibling directors' December 6, 1999 motion to stay, to reverse rulings, to recuse, and to transfer the case. In reaching this conclusion, we express no opinion on the merits of each individual claim as we have no jurisdiction to do so in the first instance. The appeal on these issues is dismissed.
 II
The second aspect of this appeal concerns the court's refusal to permit the sibling directors to intervene in Grogan's request for the appointment of a receiver. The motion for the appointment of a receiver named the company as a defendant, but not the sibling directors. In their motion to intervene, the sibling directors maintain that Grogan's request for a receiver made direct attacks upon their ability to carry out their duties as directors, so they had an acute interest in intervening to defend their individual positions. They argue the court abused its discretion by refusing to permit them to intervene.
A court's refusal to permit a party to intervene in an action is a final, appealable order. See Widder Widder v. Kutnick (1996),113 Ohio App.3d 616. Despite the finality of the court's order, there is some dispute whether the sibling directors properly appealed from a valid order because their merit brief consistently refers to their right to intervene in Grogan's counterclaim before Judge Calabrese. Grogan voluntarily dismissed that counterclaim, so the sibling directors' motion to intervene in that counterclaim would have been moot. See, e.g., Stateex rel. United States Steel Corp. v. Ross (1986), 22 Ohio St.3d 85
(settlement of action renders proposed motion to intervene moot).
The sibling directors admit in their reply brief that they consistently refer to the wrong order in the merit brief, saying that they truly appealed from the court's refusal to permit them to intervene in CV 392378 and their argument should have been based on that order. The wording of their first assignment of error, which incorrectly references their right of intervention as arising from the counterclaim in CV 388798, nonetheless correctly references a date of the court's order denying intervention that corresponds to the court's refusal to permit them to intervene in CV 392378:
 Whether the trial court (specifically Judge Anthony 0. Calabrese, Jr.) Erred in denying Mary Molly Kilfoyle's, Ann Gross' and Mark Grogan's (collectively, "Appellants") Motion to Intervene entered in the matter entitled T.W. Grogan Co., Inc. v. Timothy W. Grogan, et al., Cuyahoga County Court of Common Pleas, Case No. 388798 (the "Appraisal Action"). Trial Court Order, December 28, 1999.
App.R. 3(C) requires the notice of appeal to designate the order appealed from. We have held that the purpose of this rule is to notify an appellee of the appeal and advise the appellee of the basis for the appellant's appeal. See Parks v. Baltimore Ohio R.R. (1991),77 Ohio App.3d 426, 428, citing Maritime Manufacturers, Inc. v.Hi-Skipper Marina (1982), 70 Ohio St.2d 257, 258-259.
Because the notice of appeal referenced the December 28, 1999 order in CV 392378, we believe it gave Grogan notice of the order that formed the basis of this appeal. While there is no question that Grogan devoted his argument to the mootless issue, we do not see Grogan's position in this appeal as being prejudiced by his inability to make a specific response to the sibling directors' arguments. We will address this issue on the merits.
We do, however, take this opportunity to point out a certain degree of unprofessionalism shown by the sibling directors. It was not until the sibling directors filed their reply brief that they noticed their error and asked us to consider the appeal as stemming from CV 392378 instead of CV 388798. Not content with merely pointing out their error, the sibling directors inform us (apparently as some ground for reversing the court's rulings), that "the entirety of Appellees' response regarding this issue is irrelevant and is completely refuted when the actual issue on appeal (the denial of Appellants' Motion to Intervene in the Last Filed Action) is examined." See Appellants' Reply Brief at 1. They also state "Appellees' Brief does not even address any of Appellants' substantive arguments with respect to joinder and intervention and certainly does not set forth any substantive arguments counter to Appellants' position."Id. at 5.
We are mystified by this position, for it somehow tries to suggest that Grogan's argument that there is no appealable order is his own mistake — that he should have ignored the obvious error in the merit brief and addressed the substantive issues.
Grogan made no mistake by responding to the sibling directors' specific assignment of error and the argument in support of that assignment of error. If his response was "irrelevant" it was only because he did acknowledge the obvious error caused by the sibling directors' nescience.
Recognizing an honest mistake is one thing; trying to turn that mistake into an opponent's competitive disadvantage is another thing. The equitable doctrine of estoppel comes to mind. It arises when "one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.'" State ex rel. Madden v. WindhamExempted Village School Dist. Bd. of Edn. (1989), 42 Ohio St.3d 86, 90
(citations omitted). Counsel for the sibling directors should refresh their knowledge of this doctrine before making ridiculous arguments of the kind presently before us.
The sibling directors claim a right to intervene in Grogan's request for the appointment of a receiver based on Civ.R. 24(A)(2), which provides for intervention as a matter of right when the applicant timely claims an interest relating to the property or transaction which is the subject of the action and the party is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest. The elements of a motion to intervene are viewed in the conjunctive — all elements must be satisfied before a party is entitled to intervention as a matter of right. Widder Widder v.Kutnick (1996), 113 Ohio App.3d at 624. While motions to intervene should be liberally construed, they are nonetheless reviewed for an abuse of discretion. See Peterman v. Village of Pataskala (1997),122 Ohio App.3d 758, 761.
The first consideration in any motion for intervention as of right is whether the party seeking to intervene made a "timely application." See Civ.R. 24 (A). In State ex rel. First New Shiloh Baptist Church v.Meagher (1998), 82 Ohio St.3d 501, 503, the Ohio Supreme Court stated:
 Whether a Civ.R. 24 motion to intervene is timely depends on the facts and circumstances of the case. Norton v. Sanders (1989), 62 Ohio App.3d 39, 42, 574 N.E.2d 552, 554; NAACP v. New York (1973), 413 U.S. 345, 366, 93 5. Ct. 2591, 2603, 37 L.Ed.2d 648, 663. The following factors are considered in determining timeliness: "(1) the point to which the suit had progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervener knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervener's failure after he knew or reasonably should have known of his interest in the case to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention." Triax Co. v. TRW, Inc. (C.A.6, 1984), 724 F.2d 1224, 1228.
Grogan filed his complaint for the appointment of a receiver in CV 392378 on September 24, 1999. The sibling directors filed their motion to intervene on October 7, 1999 — thirteen days later. This was timely because the court had not yet scheduled a hearing on appointing a receiver, so the proceedings would not have been delayed.
The next element to be shown is whether the sibling directors could demonstrate an interest in intervening in the complaint.
An "applicant's interest in an action must be one that is `legally protectable.'" State ex rel. Dispatch Printing Co. v. City of Columbus
(2000), 90 Ohio St.3d 39, 40, quoting In re Schmidt (1986),25 Ohio St.3d 331, 336. When the interests of a proposed intervener are "virtually identical" to that of a party named in the action, intervention will not be granted unless the proposed intervener makes "a compelling showing that party already participating in the proceeding can not, or will not adequately represent the prospective intervener's interest." Toledo Coalition for Safe Energy v. Public Utilities Comm. ofOhio (1982), 69 Ohio St.2d 559, 562.
The sibling directors failed to show that they had an interest different from that of the corporation. Because they are directors of the company and, as a block, own a controlling share of the stock, their interests in intervening in the receivership proceeding would not be any different from that of the company. The directors of the company speak for the company and exercise all authority of a company. See R.C. 1701.59
(A). Any litigation naming the corporation would necessarily involve the sibling directors in their capacities as directors, so their interest as proposed interveners could not, by definition, be any greater than that already held by them.
The only reason the sibling directors give to justify intervention is the need to protect their names from allegations made-by Grogan in his complaint for the appointment of a receiver. We do not consider this a compelling reason justifying intervention.
Even if Grogan's allegations could be considered "personal attacks", those allegations go to the sibling directors' qualifications as directors of the company. Those allegations entail no interest different than that represented by the company through its board of directors in the receivership action. As directors of the company, the sibling directors could adequately protect their personal reputations.
Accordingly, the sibling directors failed to demonstrate an interest sufficient to warrant their intervention in the receivership action. Because the sibling directors failed to satisfy all the elements required to show an entitlement to intervention as a right under Civ.R. 24(A)(2), the court did not abuse its discretion by denying the motion to intervene.
Appeal affirmed in part; dismissed in part.
This cause is affirmed in part and dismissed in part for proceedings consistent with this opinion.
Costs to be divided equally between plaintiffs-appellees and proposed intervenors.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules Appellate Procedure. ___________________________ MICHAEL J. CORRIGAN, Judge:
TIMOTHY E. McMONAGLE. P.J., CONCURS.
ANNE L. KILBANE. J., CONCURS IN JUDGMENT ONLY.
[1] Because this appeal involves interaction among three separate cases assigned to three separate judges, it is essential that we name the individual trial court judges in order to explain their roles in the underlying cases. See Loc.R. 23(C) of the Eighth District Court of Appeals.
[2] Grogan appealed from the company's voluntary dismissal, and we suasponte dismissed the appeal in T.W. Grogan Co., Inc. v. Grogan (Jan. 14, 2000), Cuyahoga App. No. 77419, Entry No. 13699, discretionary appeal dismissed as improvidently allowed (2001), 91 Ohio St.3d 1235.