GAINS, Appellee,

v.

HARMAN, Appellant.

[Cite as *Gains v. Harman,* 148 Ohio App.3d 357, 2002-Ohio-2793.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 01 CA 89.

Decided May 30, 2002.

Paul Gains, Mahoning County Prosecuting Attorney, and Thomas Michaels, Assistant Prosecuting Attorney, for appellee.

Donald Harman, pro se.

VUKOVICH, Presiding Judge.

{¶ 1} Defendant-appellant Donald Harman, a.k.a. Donald Harmon, appeals from the decision of the Mahoning County Common Pleas Court that granted summary judgment in favor of plaintiff-appellee Paul Gains and thereby declared Harman to be a vexatious litigator, which requires him to indefinitely obtain leave of court prior to filing any legal documents. The main issue before us is whether the court properly declared that Harman was a vexatious litigator based on the cases and filings outlined by plaintiff. A related issue deals with letters Harman sent to various present and former officials. There is also a collateral issue concerning the court's failure to recuse itself. For the following reasons, the judgment of the trial court is affirmed.

## STATEMENT OF FACTS

{¶ 2} On October 5, 1999, plaintiff, who is the current Mahoning County Prosecuting Attorney, filed a complaint seeking to have Harman, an inmate,

declared a vexatious litigator under R.C. 2323.52. The complaint alleged that Harman engaged in vexatious conduct under division (A)(2)(a) by engaging in conduct merely to harass or maliciously injure a party in a civil action, and under division (A)(2)(b) by engaging in conduct that is not warranted under existing law and cannot be supported by a good-faith argument for an extension, modification, or reversal of existing law.

{¶ 3} Harman filed an answer that denied the allegations and asked that the statute be declared unconstitutional. He also raised theories of extortion, bribery, threats, and cover-ups involving plaintiff, the former prosecutor, and unnamed Mahoning County judges. Additionally, he asked that he be allowed to appeal his past claims. Thereafter, Harman submitted interrogatories to plaintiff. The fifteen questions included the following items: whether plaintiff knew that the Mahoning County Task Force planted flour or cocaine on Harman; whether plaintiff knew that the former prosecutor and defendant's former attorney, who is a former judge, extorted defendant into paying $25,000 for a plea bargain; whether it was a violation for the former judge to represent Harman; what steps plaintiff intends to take against the former prosecutor who admitted taking bribes from defendants; whether plaintiff paid bribes to the former prosecutor; whether plaintiff knew that Harman's sentence was increased without his presence; whether various civil actions were valid complaints; and whether plaintiff has a sworn duty to correct illegal sentences.

{¶ 4} On January 20, 2000, plaintiff filed a motion for summary judgment. Nine cases from the Mahoning County Common Pleas Court involving Harman were outlined, and various actions taken in each were criticized; exhibits in the form of judgment entries and docket sheets were attached supporting the criticisms. Harman filed a response that attempted to explain why each of the cases and related actions taken was valid.

{¶ 5} On March 1, 2000, the case was ordered continued by agreement of the parties due to the fact that the Supreme Court was in the midst of deciding a conflict among appellate districts as to whether the vexatious-litigator statute was constitutional. One year later, the stay was lifted after plaintiff gave the court notice that the Supreme Court found the statute constitutional in *Mayer v. Bristow* (2000), 91 Ohio St.3d 3, 740 N.E.2d 656.

{¶ 6} On March 12, 2001, plaintiff filed a revised motion for summary judgment. Similar to the original motion, plaintiff outlined seven cases involving Harman and criticized various actions taken. An affidavit was attached signed by the assistant prosecutor who was acting as plaintiff's counsel in this action and who acted as plaintiff's counsel in a civil action filed by Harman against plaintiff. Twenty-five exhibits with clerk certifications were also attached, including docket sheets, judgment entries, motions to dismiss filed by Harman's opponents in his

civil actions, filings of Harman in the relevant actions, and some letters. On March 28, 2001, Harman asked that the trial judge who had been appointed by the Supreme Court as a visiting judge, "recluse" himself based on personal prejudice and bias.

{¶ 7} On April 9, 2001, the court agreed that Harman was a vexatious litigator. Hence, as outlined in the statute, Harman was prohibited from instituting legal proceedings, continuing any legal proceedings that he instituted, and making any other application in any legal proceeding in the Court of Claims, a court of common pleas, a county court, or a municipal court without first filing an application for leave to proceed.

{¶ 8} Harman filed a notice of appeal, which this court previously deemed was timely. On appeal, Harman sets forth three assignments of error for our review.

## VEXATIOUS–LITIGATOR STATUTE

{¶ 9} For purposes of the statute, "conduct" means the filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, or the taking of any other action in connection with a civil action. R.C. 2323.51(A)(1)(a); R.C. 2323.52(A)(1). "Conduct" also means the filing by an inmate of a civil action or appeal against a government entity or employee, the assertion of a claim, defense, or other position in connection with a civil action of that nature or the assertion of issues of law in an appeal of the nature, or the taking of any other action in connection with a civil action or appeal of that nature. R.C. 2323.51(A)(1)(b); R.C. 2323.52(A)(1).

{¶ 10} Pursuant to R.C. 2323.52(A)(2), "vexatious conduct" means conduct of a party in a civil action that fits in one of the following categories:

{¶ 11} "(a) The conduct obviously serves merely to harass or maliciously injury another party to the civil action.

{¶ 12} "(b) The conduct is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law.

{¶ 13} "(c) The conduct is imposed solely for delay."

{¶ 14} We note that only the first two categories were argued by the plaintiff in the case at bar.

{¶ 15} Finally, a "vexatious litigator" is defined as a person who habitually, persistently, and without reasonable grounds engaged in vexatious conduct in a civil action or actions. R.C. 2323.52(A)(3). This statute applies to an action or actions in the Court of Claims, court of common pleas, county court, or municipal court, regardless of who instituted the action and regardless of whether the

conduct was against the same party or different parties. R.C. 2323.52(A)(3). As per uncodified law, the statute applies only to vexatious conduct that occurs on or after the effective date of March 18, 1997. See 1996 H.B. No. 570, Section 3.

{¶ 16} As aforementioned, the statute was declared constitutional in *Mayer v. Bristow* (2000), 91 Ohio St.3d 3, 740 N.E.2d 656. In that case, the court found that the objective of the statute is to prevent the abuse of the system by vexatious litigators who deplete judicial resources, "unnecessarily [encroach] on judicial machinery needed by others for the vindication of legitimate rights," and attempt "to intimidate public officials and employees or cause the emotional and financial decimation of their targets." Id. at 13, 740 N.E.2d 656. Although the case makes some pronouncements on the purpose of the statute, it does not provide guidance in the case at bar because Bristow conceded that he was a vexatious litigator whereas Harman contests this label placed upon him.

## ASSIGNMENT OF ERROR NUMBER ONE

{¶ 17} Harman's first assignment of error contends:

{¶ 18} "Trial court erred as a matter of law when it ruled the appellant Harman is a 'vexatious litigator' pursuant to O.R.C. 2323.52."

{¶ 19} Harman argues that plaintiff failed to sufficiently show that he is a vexatious litigator. In analyzing his new label, we must first go through each civil case presented as an exhibit and determine whether certain contested actions taken within each case constitute vexatious conduct in that they served merely to harass or maliciously injure another party to the civil action or they were unwarranted under existing law and could not be supported by a good-faith argument. R.C. 2323.52(A)(2). After reviewing the contested actions within each case for such criteria, we must then concentrate on the actions that meet the criteria and determine whether together they represent behavior that is habitual, persistent, and without reasonable cause. R.C. 2323.52(A)(3).

{¶ 20} We shall begin with case No. 97CV2512. In October 1995, Harman pled guilty to felonious assault for stabbing Joseph Davilla. Harman sued plaintiff, the county prosecutor, in August 1997, alleging a civil rights violation for allegedly failing to act on information that Harman was innocent of felonious assault, failing to disclose information, using perjured testimony, and slander. He stated that his only act of violence against the victim was a blow to the mouth. He focused on a written confession to the stabbing signed by his friend, Samir Awadallha, on August 10, 1995. (Note that the confession was signed prior to Harman's guilty plea and appears to have been previously submitted by Harman.)

{¶ 21}  Plaintiff filed a motion to dismiss Harman's suit. Harman filed a response.  He also filed a motion to strike, alleging that the dismissal motion was void because an answer had already been filed.  However, an answer had not yet been filed.  Hence, the motion to strike was unsupported by existing law and not subject to a good-faith argument otherwise.

{¶ 22}  In October 1997, the court dismissed Harman's suit.  The court noted that Harman's complaint was "confusing in that it makes reference to three different criminal cases and possibly, has misnumbered a fourth."  The court also states that Harman's complaint "is clouded" by his motion in opposition to the motion for dismissal because he seems to assert that the claim was already considered in a habeas corpus action.  The court then stated that Harman failed to plead a valid slander action, noting that Harman has been previously advised of prosecutorial immunity by the appellate court in *Harman v. Gessner* (Sept. 9, 1997), Mahoning App. No. 96CA123, 1997 WL 568009, where he presented the same and similar theories when he sued the assistant prosecutor from his 1989 voluntary manslaughter conviction and subsequent 1991 reversal for a new trial. Harman did not appeal from the trial court's dismissal in No. 97CV2512.

{¶ 23}  Although we may not use actions occurring before March 18, 1997, as evidence of a pattern of vexatious conduct, the fact that he had previously been instructed that part of his claim was invalid, supports plaintiff's claim that at least part of Harman's complaint in No. 97CV2512 was unwarranted under existing law and not subject to a good-faith argument for extension, modification, or reversal of existing law.  Hence, we have at least two incidents of vexatious conduct occurring in that case.

{¶ 24}  We move on to case No. 97CV2657.  In January 2001, Harman filed a motion to stay a sheriff's sale in a foreclosure action concerning property on Montgomery Avenue that was not titled in his name but rather was titled in the name of Nancy Sparks.  In February 2001, the trial court overruled his motion.  In doing so, the trial court noted that in August 2000, the bankruptcy court instructed Harman that his bankruptcy petition would not stay foreclosure on the Montgomery Avenue property because he had no ownership interest in the property.  The trial court then characterized the motion as being "predicated on a total misrepresentation."  This motion is aptly characterized as being unwarranted by existing law and unsupportable by a good-faith argument for extension. Harman offered no argument otherwise below and currently makes vague arguments concerning his standing in the foreclosure proceedings against Sparks.

{¶ 25}  Next, we review case No. 98CV23.  In January 1998, Harman filed a legal malpractice suit against attorney Wise for failing to have Harman's name placed on a birth certificate, failing to file an appeal, and mishandling an

eviction case. These acts were alleged to have occurred in 1994 and 1995 with no allegations of delayed discovery. Although he admitted in open court that his complaint was based on legal malpractice, he maintained that a two-year or four-year general torts statute-of-limitations applied; however, there is no basis for this argument. The court dismissed Harman's action in February 2000 because the one-year statute of limitations for legal malpractice actions set forth in R.C. 2305.11 had run. Accordingly, at least some of Harman's arguments in response to the motion to dismiss his legal malpractice action are unwarranted under the existing statute-of-limitations law, and he set forth no good-faith arguments for extension, modification, or reversal of such law.

{¶ 26} Plaintiff also argued that other actions taken in No. 98CV23 were vexatious. First, plaintiff states that Harman's motion to have the court recuse itself is based on unsubstantiated facts and spurious innuendos. Even if this is so, Harman makes a point that a judge who he has previously (and unfoundedly) accused of taking bribes may feel biased against him and that the defendant has a right to ask and file this mere request. Therefore, we would not categorize the recusal motion as unwarranted. Second, plaintiff points to an interrogatory that asked Harman to identify the required legal expert that Harman intended to call as a witness. Harman named two attorneys who both later informed Harman's opponent that they were never contacted and would not testify as Harman's experts. We do not categorize Harman's discovery response as "unwarranted under existing law" because it is more of a factual topic.

{¶ 27} The next case to consider is No. 98CV2081. In this case, Harman sued then-sheriff Phil Chance and four deputies for false arrest and conspiracy to violate his constitutional rights. Both claims concerned Harman's accusations of cocaine-planting that allegedly occurred during his arrests in mid–1994 and in mid–1995. We note that Harman also made allegations in his complaint against individuals who were not even named in the caption. The officers asked that the complaint be dismissed on the basis that the false arrest claim was barred by the one-year statute of limitations and that the civil rights action was barred by a two-year statute of limitations and/or that the civil rights action may not proceed without evidence that his criminal conviction was overturned. Harman responded by stating that he "was told" not to file the suit until indictments were issued against the officers; he admitted that he knew their identity but was waiting for their arrest prior to filing his civil action. The court dismissed the case in April 1999.

{¶ 28} Plaintiff argued that the above action was filed without support under the existing law and was not supported by a good-faith argument for extension. Harman merely responded by reiterating his claim that his civil rights were violated and noting that all officers had been found guilty for unnamed crimes.

On appeal, Harman states that he was unaware of the identity of the perpetrators earlier. However, several facts make this statement invalid: he did not state this to the trial court in the prior action; he in fact admitted that he purposely waited to file the action; and even if he was unaware of the identity of some officers, the identity of other officers was readily available to him as those who arrested him on the alleged dates.

{¶ 29} Even if Harman had a good-faith argument for extension of existing law on statute-of-limitations tolling based on his argument that the statutes are tolled until a conviction is overturned on appeal or through post-conviction procedures, he failed to present such an argument to the trial court in this current case. He did not, for instance, place his supplemental response in the prior case, which mentioned the tolling argument, into the record in the present case. In fact, he did not even allude to the argument. Hence, he failed to meet his reciprocal burden of establishing a genuine issue on this filing.

{¶ 30} Plaintiff also mentions that Harman asked this court to recuse itself from the prior appeal because the sheriff's department provides our security and because, at that time, we were ruling on the validity of his prior drug convictions. We do not find this motion for recusal to be unwarranted when such is merely a request.

{¶ 31} We shall move on to case No. 98CV2213. In 1996, the aforementioned stabbing victim, Davilla, with the assistance of attorney Giannini, won a $100,000 civil judgment in case No. 95CV1496 against Harman for the assault; in that case, the court entered summary judgment against both Harman and Awadallha. Harman did not appeal that judgment. Yet, in 1998, Harman sued Davilla and Giannini, alleging malicious prosecution because they knew that Samir Awadallha had confessed to the stabbing. Those defendants then sought summary judgment because Harman pled guilty to the crime and his civil liability was previously allocated along with Awadallha's liability in the prior civil suit. In November 1998, the court granted summary judgment against Harman, noting the prior criminal and civil cases. Harman appealed, but this court dismissed his appeal for failure to proceed.

{¶ 32} Harman's conviction for the assault has not been overturned, and he failed to appeal the civil judgment entered against him for that assault. Yet he claimed that the civil judgment was the result of malicious prosecution based on the exact facts that existed at the time the judgment was rendered. The trial court properly determined that this suit was not warranted under existing law and was not supported by a good-faith argument for extension.

{¶ 33} We next evaluate the case of No. 99CV2966 along with No. 00CV1745. In December 1999, Harman filed suit against current Sheriff Well-

ington over a dispute on a $30 processing fee. The case was dismissed in June 2000. Almost immediately, Harman refiled the action. The court dismissed the case again for lack of compliance with the pertinent statutes. Harman complains that he could not remember his case numbers or the facts of the cases that he was contesting and argues that the sheriff had an obligation to remind him so he could comply with the statutes. The trial court did not err in finding that the combined effects of these actions as filed were unwarranted under existing law.

{¶ 34} The court must now review the outlined behaviors it determined were both unwarranted and unsupportable by a good-faith argument for extension, modification, or reversal of existing law, i.e., constituted vexatious conduct. These vexatious acts must be evaluated to determine whether they collectively show that Harman's conduct is habitual, persistent, and without reasonable grounds.

{¶ 35} Due to the relative newness of the vexatious-litigator statute, the case law is not yet developed. For comparison, the following case review is of assistance. In *Hull v. Sawchyn* (2001), 145 Ohio App.3d 193, 762 N.E.2d 416, the Eighth Appellate District upheld a vexatious-litigator determination. In that case, the defendant had sued the plaintiff-city law director four times for allegedly improperly denying the same occupancy permit. The plaintiff successfully sued the defendant under the vexatious-litigator statute. The appellate court stated that the complaints were not warranted under existing law and could not be supported by a good-faith argument for extension of existing law. Id. at 197, 762 N.E.2d 416. See, also, *Georgeadis v. Dials* (Dec. 9, 1999), Franklin App. No. 99AP–232, 1999 WL 1124713 (noting that attempts to relitigate matters which have been previously adjudicated constitute vexatious conduct). Cf. *Pisani v. Pisani* (Nov. 18, 1999), Cuyahoga App. No. 74799, 1999 WL 1044480 (where the court reversed a vexatious-litigator determination, stated that impatience with an inexperienced litigator is not the standard, and noted that although one may be a prolific filer, if the filings are not baseless, then the litigator is not vexatious).

{¶ 36} The *Hull* court noted that although, subjectively, the defendant may simply seek what he believes is justice, it is the objective result of the action that is evaluated. 145 Ohio App.3d at 197, 762 N.E.2d 416. The court found that the four refiled actions represented habitual and persistent conduct. See id. The court noted that the plaintiff met his burden and that the defendant failed to meet his reciprocal burden of demonstrating a genuine issue existed because the defendant alleged systemwide collusion and individual corruption rather than the relevant issues concerning basis for refiling the action more than once. Id.

{¶ 37} To the contrary, the Tenth Appellate District has stated, "The four or five cases listed and the alleged conduct do not amount to habitual and persistent conduct." *Cent. Ohio Transit Auth. v. Timson* (1998), 132 Ohio App.3d 41, 54,

724 N.E.2d 458. Yet that court may have spoken too broadly and out of order because it then stated that the conduct was not vexatious because the exhibits did not show that the conduct was unwarranted under existing law. Id. at 54–55. As previously outlined, one does not reach the habitual and persistent prongs until the conduct is found to be vexatious, i.e., unwarranted.

{¶ 38} Upon reviewing the acts found to constitute vexatious conduct in this case, we agree that the acts constituted habitual and persistent conduct done without reasonable grounds. Hence, this assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER TWO

{¶ 39} Harman's second assignment of error contends:

{¶ 40} "Trial court Judge Cacciopo was personally biased and prejudiced towards appellant Harman as demonstrated by her own words in court and out of court."

{¶ 41} Appellant notes that before entering judgment on April 9, 2001, the court failed to rule on his March 28, 2001 motion for "reclusal [sic]." He then alleges that the trial court was biased against him in that "she lied" and refused to set damages in a prior action and she dismissed many of his civil actions. He also sets forth statements allegedly made by the court to him in September 1999 and October 2000.

{¶ 42} Initially, we note the timing of the alleged statements in relation to the motion to recuse. Most important, however, we direct Harman to R.C. 2701.03, which provides the proper procedure for seeking disqualification of a judge. See, also, Section 5(C), Article IV of the Ohio Constitution. As can be seen by docket entry exhibits in case No. 98CV23, Harman is aware of this procedure and has utilized it before.

{¶ 43} The appellate court is without authority to pass upon issues of disqualification or to void a judgment on the basis that a judge should be disqualified for bias or prejudice. See, e.g., *Beer v. Griffith* (1978), 54 Ohio St.2d 440, 441–442, 8 O.O.3d 438, 377 N.E.2d 775; *State v. Ramos* (1993), 88 Ohio App.3d 394, 398, 623 N.E.2d 1336; *Wolk v. Wolk* (Sept. 25, 2001), Mahoning App. No. 98CA127, 2001 WL 1199836; *State v. Cope* (July 17, 2001), Columbiana App. No. 2000CO38, 2001 WL 844754 (noting that the Chief Justice of the Supreme Court or his designee has exclusive jurisdiction to determine a claim that a common pleas court judge is prejudiced); *Grogan v. T.W. Grogan Co.* (2001), 143 Ohio App.3d 548, 758 N.E.2d 702 (noting that trial courts' refusal to recuse themselves is not appealable to the appellate court). As such, this assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER THREE

{¶ 44} Harman's third and final assignment of error provides:

{¶ 45} "Letters do not count as the filing of a civil action, as seen by the newspaper articles used for information only to show the taking of bribes by public officials."

{¶ 46} Harman presents this assignment in response to plaintiff's Exhibit Nos. 14, 15, and 16, which the court found reflected vexatious conduct in that they served merely to harass or maliciously injure. Exhibit 14 is a letter from Harman to former Sheriff Phil Chance, whom Harman sued for false arrest and conspiracy. At the time the letter was sent, Harman had an appeal pending of the trial court's dismissal of the action in favor of Chance. There is no question that this letter was sent merely to harass and maliciously injure Harman's opponent. After mentioning the civil action, the reasons for suing Chance, and the need for evidence against Chance, the letter congratulates Chance on his incarceration, states Harman's desire that Chance get life in prison, and pronounces, "I hope that you saved some of your bribe money so you don't have to have your Ass plundered for commissary * * *." Harman argues that a letter is not conduct.

{¶ 47} However, a harassment and malicious-intent analysis is not the first step. Referring back to the law previously set forth, we note that R.C. 2323.51(A)(1)(a) talks about a civil action, whereas R.C. 2323.51(A)(1)(b), which specifically refers to the inmate's action against the government and its employees, talks about a civil action *and* the appeal of that action. This implies that R.C. 2323.51(A)(1)(a) does not include action taken during the appeal process. Although R.C. 2323.51(A)(1)(b) also applied to Harman because he was an inmate suing government employees, at the time the letter was sent, Chance was no longer a government employee.

{¶ 48} As for Exhibits 15 and 16, these are letters Harman sent to the assistant prosecutor during the time of the civil suit against the former sheriff. These letters seem to have nothing to do with that civil suit or the parties thereto but rather accused the former prosecutor, two judges, and an attorney of bribe-related activity. As such, Harman argues that the letters could not maliciously injure "another party to the civil action," they do not "obviously serve merely to harass" the other party, and they are not in "connection with" the civil action.

{¶ 49} Due to our analysis under the first assignment of error, the court had before it sufficient evidence of his vexatious-litigator status regardless of these letters. Hence, we shall not opine on the validity of this assignment of error.

**370**

{¶ 50}   For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Judgment affirmed.

GENE DONOFRIO and WAITE, JJ., concur.