[Cite as *Eichenberger v. McCown*, 2024-Ohio-6033.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

RAYMOND L. EICHENBERGER : JUDGES:
:
:
: Hon. Patricia A. Delaney, P.J.
Plaintiff-Appellant : Hon. William B. Hoffman, J.
: Hon. Craig R. Baldwin, J.
-vs- :
: Case No. 23 CAE 10 0094
:
JESSICA MCCOWN, ET AL. :
:
:
Defendants-Appellees : O P I N I O N


CHARACTER OF PROCEEDING: Appeal from the Court of Common
Pleas of Delaware County
22 CVH 020074


JUDGMENT: Affirmed


DATE OF JUDGMENT ENTRY: December 23, 2024


APPEARANCES:

For Plaintiff-Appellant: For Defendants-Appellees:

Raymond L. Eichenberger Levi J. Tkach
P.O. Box 431 604 East Rich Street
Reynoldsburg, Ohio 43068 Columbus, Ohio 43215

*Delaney, P.J.*

{¶1} Plaintiff-Appellant Raymond L. Eichenberger has appealed a Judgment Entry Announcing the Verdict Following the July 2023 Trial from the Court of Common Pleas of Delaware County. Mr. Eichenberger is an attorney who appeared pro se in this matter. Defendants-Appellees are Jessica McCown, Cameron McCown, and Eli Miller.

### FACTS AND PROCEDURAL HISTORY

{¶2} In May 2020, Raymond L. Eichenberger entered into an oral contract with Jessica McCown to board and train a Standardbred racehorse named Red Foot Ernie Ray ("Ernie Ray").[1] Her husband, Cameron McCown, drove Ernie Ray in harness races and also provided training services. In May 2021, Mr. Eichenberger entered into an oral contract with Ms. McCown to board and train a second Standardbred racehorse, Red Foot Halstyle ("Halstyle"). The horses were owned by Mr. Eichenberger and Halstyle Racing Stables, LLC, which purportedly assigned its rights and claims against the defendants to Mr. Eichenberger.

{¶3} Mr. Eichenberger agreed to pay Ms. McCown $40 per day. Ms. McCown leased barn space at the Delaware County Fairgrounds where she boarded all the horses that she was training for racing. The costs of feed and board were not delineated in the agreement, but, according to Ms. McCown, they were included in the daily training fee and amounted to $17.50 per day. The fairgrounds charged Ms. McCown $137 per month for each horse's stall. Other incidental fees such as shoeing, transportation, veterinary

---

[1] In lieu of a transcript, the trial court approved an App.R. 9(C) statement titled "11/6/23 Statement of the Proceedings and Evidence on Appeal."

fees, and racing expenses were paid by Ms. McCown and then billed each month to Mr. Eichenberger.

{¶4} Mr. Eichenberger paid these bills for several months without question while Ernie Ray was racing well and covering his expenses with his race winnings. Halstyle was jogged and trained during this time but did not race. Prior to her first qualifying race, it was discovered that Halstyle had a knee injury. She underwent surgery in December 2020 at The Ohio State University Veterinary Medical Center in Columbus, Ohio. Ms. McCown did not charge the $40 per day fee while Halstyle was out of her care. From May of 2020 to May of 2021, Mr. Eichenberger paid approximately $30,000.00 to Ms. McCown.

{¶5} Sometime in May 2021, Mr. Eichenberger stopped paying the invoices. In July 2021, Ms. McCown sent him a text message telling him to retrieve the horses because she was paying out of pocket and not receiving payments from him for their care and training. The account was approximately three months in arrears. Mr. Eichenberger did not make other arrangements for the horses.

{¶6} Ms. McCown stopped training the horses but continued to pay for their feed and board. On July 29, 2021, Mr. Eichenberger made a payment of $1,000 on the past due amount, but as of July 31, 2021, he owed $12,409 to Ms. McCown.

{¶7} In August 2021, Ms. McCown moved the horses to a stable owned by Eli Miller in Wayne County, Ohio. She did so in an effort to reduce her costs when the fairgrounds doubled its fees that month due to events being held there. Ms. McCown regularly boarded horses with Mr. Miller for turn out when they were not being raced. Mr. Eichenberger learned that the horses had been moved when he received a bill from Mr. Miller for transport and stabling. Mr. Eichenberger emailed Mr. Miller and told him the

horses were not to be in his possession, and they were to be delivered to his new trainer located at the Franklin County Fairgrounds. He filed a theft report for the horses in Delaware County. The horses were returned to Ms. McCown at the Delaware County Fairgrounds. They remained at the fairgrounds from October 2021 to August 2022.

{¶8} In August 2022, Ms. McCown sent the horses to another facility that she also regularly used for turn outs. The horses remained there as of the trial and Ms. McCown directed their care. The facility has not exerted any control over the horses and would return them to Ms. McCown if asked to do so.

{¶9} On December 3, 2021, Mr. Eichenberger filed a Complaint against Ms. McCown, Mr. McCown, and Mr. Miller in the Franklin County Court of Common Pleas. He alleged negligence, breach of contract, invasion of privacy, negligent infliction of emotional distress, and intentional infliction of emotional distress against the McCowns. He also alleged conversion against the McCowns and Mr. Miller. On February 16, 2022, the trial court in Franklin County transferred the case to Delaware County. Ms. McCown then raised three counterclaims, two of which were later dismissed by the trial court.

{¶10} In addition to the Complaint, Mr. Eichenberger moved for emergency possession and custody of the horses. The trial court treated the motion as a motion for replevin pursuant to R.C. 2737. His request was denied.

{¶11} The trial began on July 27, 2023. During cross examination, the defendant's attorney began questioning Mr. Eichenberger about a judgment entry from the Franklin County Court of Common Pleas which declared Mr. Eichenberger to be a vexatious litigator pursuant to R.C. 2323.52. The case was captioned *Franklin Cty. Prosecutor, G.*

*Gary Tyack v. Raymond L. Eichenberger*, 21 CV 002629.[2] The statute and the entry required Mr. Eichenberger to seek leave from the court in Franklin County before pursuing his claims in any other case. Mr. Eichenberger had filed a motion to quash service of the vexatious litigator order, but it had not been ruled on before the start of this trial. Mr. Eichenberger also filed a Writ of Mandamus seeking a ruling on his motion. During the seven-month period from the judgment entry in Franklin County to the trial in Delaware County, Mr. Eichenberger neither sought the required leave from Franklin County nor informed the trial court in this case of the judgment. Although the motion to quash was ultimately granted on August 21, 2023, and the judgment was vacated, it was almost a month after the conclusion of the trial in this case.

{¶12} After the disclosure of the vexatious litigator judgment, the trial court held a sidebar conversation. Mr. Eichenberger maintained that he had not been properly served in the vexatious litigator case and argued against the use of the judgment entry because he believed it was "irrelevant" and a "waste of time." Neither party objected to proceeding with the trial or argued that R.C. 2323.52 prevented the case from proceeding. Mr. Eichenberger suggested that he may file a motion to dismiss his claims.

{¶13} The judge indicated that he would further examine the judgment entry to determine if there was anything he was required to do. He also noted that, even if Mr. Eichenberger dismissed his claims, Ms. McCown's counterclaim would remain pending. After the sidebar, Mr. Eichenberger's testimony was completed and Ms. McCown testified.

---

[2] Pursuant to the App.R. 9(C) statement, the procedural history of the vexatious litigator case "was not addressed at the July 27-28 trial." It is included here for clarity of discussion.

{¶14} Before the start of the second day of trial on July 28, 2023, Mr. Eichenberger filed a Notice of Dismissal, Without Prejudice. The judge interpreted the motion under Civ.R. 41(A)(2) because the trial had commenced, a jury had been empaneled, and testimony had been given. He dismissed Mr. Eichenberger's claims with prejudice. Although Mr. Eichenberger filed his motion in person with the clerk's office, he did not notify the judge of the motion and did not appear in court for trial. He did not respond to a phone call and an email from the court regarding his attendance, despite being informed that a counterclaim remained pending and would be tried.

{¶15} At trial, the defendants made a request for attorney's fees based on bad faith for failing to disclose the vexatious litigator status. They proffered evidence that the fees and costs they incurred in defending the claims and pursuing their counterclaim was $11,018.75 in attorney's fees, $366.75 in litigation costs, and $600 in Mr. Miller's transportation costs to and from the court over four days.

{¶16} In its Judgment Entry Announcing the Verdict Following the July 2023 Trial, the trial court granted a declaratory judgment to Ms. McCown on her counterclaim and held that she had an agister's lien on Ernie Ray and Halstyle for unpaid feed and board. As a result, the court ruled she was entitled to use the procedures set forth in R.C. 1311.49 to sell the horses. In addition, the trial court awarded $5,529.25 in attorney's fees to defendants and ordered Mr. Eichenberger to pay all the costs of the case. It is this judgment entry from which Mr. Eichenberger has appealed.

**ASSIGNMENTS OF ERROR**

I.

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW BY TRANSFERRING VENUE OF THE CASE TO DELAWARE COUNTY COMMON PLEAS COURT FROM FRANKLIN COUNTY COMMON PLEAS COURT WHEN ANOTHER CIVIL RULES PLACE OF VENUE WAS AVAILABLE TO BE ELECTED BY THE PLAINTIFF. ALSO, VENUE IN FRANKLIN COUNTY WAS ORIGINALLY CORRECT.

II.

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW BY DENYING THE PLAINTIFF REPLEVIN AND POSSESSION OF THE RACEHORSES IN QUESTION PURSUANT TO HIS PRE-TRIAL MOTION, WHEN THE ALLEGED LIENHOLDER HAS GIVEN POSSESSION OF THE HORSES TO A THIRD PARTY.

III.

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW BY FINDING THAT THE DEFENDANTS MCCOWN HAD A VALID COUNTERCLAIM TO FILE AGAINST THE PLAINTIFF. THE COUNTERCLAIM WAS BARRED BY RES JUDICATA, AND SAID DEFENDANTS THEN NEVER FILED A VALID COUNTERCLAIM AFTER BEING GRANTED LEAVE OF COURT TO DO SO.

IV.

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW BY ASSERTING THAT THE COMPLAINT AND CAUSES OF THE ACTION OF THE PLAINTIFF WERE TO BE DISMISSED WITH PREJUDICE, INSTEAD OF HEEDING THE CONTROLLING CASE LAW OF THE OHIO REVISED CODE AND THE VEXATIOUS LITIGATOR STATUTES THAT ANY DISMISSAL WAS WITHOUT PREJUDICE.

V.

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN GRANTING AN AWARD OF ATTORNEY'S FEES AGAINST THE PLAINTIFF IN THE CIVIL CASE.

**ANALYSIS**

I.

{¶17} In his first assignment of error, Mr. Eichenberger has argued that the trial court abused its discretion and erred as a matter of law by transferring the case from Franklin County to Delaware County. He has claimed that there were sufficient contacts with Franklin County to make venue there correct. He has also claimed that if venue was improper in Franklin County, it was proper in both Delaware County and Wayne County, and that he should have been given the choice in which court to litigate.

{¶18} The Ohio Supreme Court defines venue as "the locality where the suit should be heard." *Morrison v. Steiner*, 32 Ohio St.2d 86, 86 (1972). This Court has stated that "the question of venue is one of convenience and asks in which court, among all of those with jurisdiction, to best bring a claim." *A1 Heating and Cooling, Inc. v. Thomas*, 2024-Ohio-109, ¶ 35 (5th Dist.), citing *State ex rel. Florence v. Zitter,* 2005-Ohio-3804, at ¶23. A plaintiff does not have complete freedom of choice in selecting his forum. *Id.*, at 86. "Venue, which relates to the geographic division where a cause can be tried, must also be proper." *Id.,* citing *Loftus v. Pennsylvania Rd. Co.*, 107 Ohio St. 352, at 357 (1923).

{¶19} Venue is a procedural matter governed by Civ.R. 3(C). That Rule provides, in pertinent part:

> **(C) Venue: Where Proper.** Any action may be venued, commenced, and decided in any court in any county. When applied to county and municipal courts, "county," as used in this rule, shall be construed, where appropriate, as the territorial limits of those courts. Proper venue lies in any one or more of the following counties:
>
> (1) The county in which the defendant resides;
> (2) The county in which the defendant has his or her principal place of business;
> (3) A county in which the defendant conducted activity that gave rise to the claim for relief; . . .

(6) The county in which all or part of the claims for relief arose; . . . .

The decision whether to change venue is within the trial court's sound discretion and will not be overturned absent an abuse of that discretion. *State ex rel. Dunbar v. Ham*, 45 Ohio St.2d 112, 114 (1976).

{¶20} Mr. Eichenberger alleged three contact points with Franklin County. The first was that one of the horses, Ernie Ray, raced in Franklin County. The second was that Mr. Eichenberger received bills for expenses for the racing that occurred in Franklin County. The third was that Halstyle received veterinary care in Franklin County for an injury that Mr. Eichenberger claimed resulted from the McCowns' negligence.

{¶21} The Franklin County Court of Common Pleas reviewed the pleadings and determined that venue was improper. The court noted that the causes of action arose from expenses related to board and training, not racing. While Ernie Ray may have raced in other counties, the horses were fed in Delaware County, boarded in Delaware County, and trained in Delaware County. The McCowns resided in Delaware County. Ms. McCown rented a portion of a stables in Delaware County. The agisters lien arose in Delaware County.

{¶22} Similarly, the fact that one horse received veterinary care in Franklin County in December 2020 was insufficient to establish venue there. There was no evidence presented as to how the injury to Halstyle occurred or that it occurred outside of Delaware County. Other than the surgery and post-surgical care, the only evidence presented as to her location prior to her surgery was that she was boarded and trained in Delaware County.

{¶23} Mr. Eichenberger also argued that he would have chosen Wayne County to present his claim because he could not get a fair trial in Delaware County. Despite that claim, he presented no evidence to substantiate that the proceedings in Delaware County would be unfair.

{¶24} Although the McCowns have argued that Mr. Eichenberger should have appealed the Franklin County order to transfer venue, the proceeding for a change of venue is not a special proceeding. *State ex rel. Starner v. DeHoff*, 18 Ohio St.3d 163 (1987), citing *Timson v. Young*, 70 Ohio App.2d 239 (1980). A change of venue order does not determine the action or prevent a judgment. *Id.* Accordingly, pursuant to Civ.R. 3(C)(1), it is not a final appealable order and is reviewable only after a final judgment is entered in the case. *Id.* Mr. Eichenberger was permitted to bring this assignment of error after the judgment entry issued by the Delaware County Court of Common Pleas.

{¶25} We have reviewed the record regarding the motion for change of venue and can find no error in the trial court's ruling. We do not find that the trial court's action in granting the motion for change of venue included any errors of law. From the evidence in the record, we determine it was not unreasonable, arbitrary, or capricious, and accordingly was not an abuse of discretion. The first assignment of error is overruled.

II.

{¶26} In his second assignment of error, Mr. Eichenberger has argued that the trial court erred by denying his motion for replevin and for failing to return the horses to his possession. Ms. McCown claimed continued possession of the horses by virtue of an agister's lien.

{¶27} An agister is someone who provides feed and takes care of an animal. *Campbell v. Rich,* 1993 WL 97629, * 2 (4th Dist.). R.C. 1311.48 provides that any person who feeds or cares for an animal under contract with the owner shall have an agister's lien on the animal to secure payment for its feed and board. *Id.*, citing 3 Ohio Jurisprudence 3d (1978) 598, Animals, Section 28. The statute provides:

> As used in sections 1311.48 and 1311.49 of the Revised Code "animal" means any animal other than man and includes fowl, birds, fish, and reptiles, and "owner" means and includes the person who holds legal title to an animal, or any other person, having lawful custody of an animal, who contracts for food, board, or professional services for such animal.

> Any person who feeds or boards an animal under contract with the owner shall have a lien on such animal to secure payment for food and board furnished.

R.C. 1311.48. If the owner of the animal does not satisfy the lien, R.C. 1311.49 provides that the animal may be sold to satisfy it pursuant to the steps set forth in the statute.

{¶28} In a case in which a court was asked to determine a mortgagee's priority over an agister's interest, the Ohio Circuit Court noted the purpose and benefit of the agister's lien. Aylmore v. Kahn, 1896 WL 550, at *2 (Ohio Cir. Ct. 1896). The court stated:

> Now the lien of this agister is not the true creature of contract; it is created by statute from the fact of the keeping of the cattle. The possession of the agister was rightful; the keeping gave rise to the lien, and such keeping was as much for the interest of the mortgagee as the mortgagor. The cattle were kept alive thereby; and the principle seems to be, that where the mortgagee does not take the possession, but leaves it with the mortgagor, he thereby consents to the creation of a statutory lien for any expenditure reasonably necessary for the preservation or ordinary repair of the thing mortgaged.

The agister's continued care of the animals, despite not being paid, meant that the animals were provided for and kept alive.

{¶29} Mr. Eichenberger has argued that the McCowns waived their rights to a lien when they moved the horses to Mr. Miller's farm in August 2021. He contended that continued physical possession of the horses was necessary for a valid lien. The trial court correctly noted that there are two instances when a lien may be lost or waived. The first is when the animal is relinquished to its owner. *See, e.g., Seebaum v. Handy,* 46 Ohio St. 560 (1889). The second is when the animal leaves the agister's custody and is purchased by a third party who lacks any knowledge of a lien. *See, e.g., Moore v. Whitehead*, 19 Ohio Dec. 456, 459 (C.P. 1908).

{¶30} The key to both of those circumstances is notice of an intention to assert a lien. In *Seebaum,* the Ohio Supreme Court stated:

> The lien given is a right to retain the property - that is, its possession - as a security for the debt, and, if this right is not insisted on when the horse is called for, the owner cannot be said to violate any agreement in not afterwards returning it; for he has no notice of an intention on the part of the keeper to assert a lien when the property is voluntarily delivered to him.

*Seebaum,* at 568. Based on this reasoning, a lien is lost by a change of possession that is inconsistent with the agister's interests or that indicates an intent to waive, relinquish, or abandon it.

{¶31} In a case involving a car that had been serviced and the bill left unpaid, it was argued that the owner of the repair shop lost his lien when an officer took possession of the car for a judicial sale. *Ironton Garage Co. v. McKee*, 28 Ohio Dec. 137 (C.P. 1917). The court disagreed and determined that the officer acted as an agent for the garage owner for the purposes of the attachment. *Id.* The garage owner did not surrender possession to the owner or to anyone else acting in the furtherance of the owner's interests. *Id.*

{¶32} Mr. Eichenberger relies on the case *Defiance Production Credit Association v. Hake,* 70 Ohio App.2d 185 (6th Dist. 1980), for the proposition that the lien is possessory and exists only when the agister has continued physical possession of the animal. The trial court correctly determined that his reliance is misplaced. In that case, the alleged lien holder was a feed supplier who delivered feed to the bins at a farm that boarded hogs. The court held that merely selling the feed for the hogs' use was not enough, rather the hogs would have to have been in the possession or care for a lien to arise. *Defiance*, at 185-86.

{¶33} In this case, Ms. McCown had the horses in her care for more than a year for training before she moved them to another facility to turn them out. Because Mr. Eichenberger was no longer paying the fees to train or race them, she chose this option as a means to care for the horses and to help her costs in providing for them. They were returned to her upon her request, and Mr. Miller never asserted a claim to the horses. At no time were the horses returned to their owner, and they were not sold to a third party. Accordingly, Ms. McGown did not waive her agister's lien. The court correctly concluded that the lien was valid and denied Mr. Eichenberger's motion for replevin. The second assignment of error is overruled.

III.

{¶34} In his third assignment of error, Mr. Eichenberger has argued that the trial court erred by finding that the defendants had a valid counterclaim because it was never filed after the defendants were granted leave to do so and the counterclaim was barred by res judicata. We disagree.

{¶35} Defendants filed an answer and a counterclaim as separate documents. The trial court granted Mr. Eichenberger's motion to strike the counterclaim. The court first noted that the counterclaim was improperly filed as a stand alone filing and that "counterclaims must be in a pleading*, i.e.,* an answer." The trial court went on to say that "while not strictly following convention and labeling it as such," the answer was effectively amended to assert a counterclaim. It was stricken, however, for failure to comply with Civ.R. 11 which requires a pleading to be signed by an attorney.

{¶36} In a motion for leave, the attorney explained that there was a problem entering both the answer and counterclaim in a single PDF and that the full counterclaim was not captured. On April 21, 2022, the trial court granted leave, expressly for a counterclaim, and the counterclaim was filed the same day.

{¶37} The original counterclaim contained three counts. The first two were for breach of contract and unjust enrichment. The third was for a judicial finding that the agister's lien was valid, permitting Ms. McCown to proceed with the sale procedures as required by R.C. 1311.49.

{¶38} Mr. Eichenberger filed a motion to dismiss the counterclaims. He argued that the document was again submitted as a counterclaim, and not an amended counterclaim with an answer. He also argued that the counterclaim was barred by res judicata because Ms. McCown had filed a previous case in the Small Claims Court of the Delaware County Municipal Court captioned *Jessica McCown v. Raymond Eichenberger,* 21 CVI 1791.

{¶39} In that case, Ms. McCown sought judgment that she was owed the amount for "services provided not paid for; horses were cared for and trained, and bills were not

paid." Attached to the complaint was an account statement from appellee regarding appellant's account. The account provided that the total billed from January 1, 2020, to October 31, 2021, was $44,629, and reflected that Mr. Eichenberger had paid $33,386.00, for a total due of $12,243. The judgment entry stated "based on the evidence adduced, the court finds defendant owes plaintiff $6,000+ on a delinquent account for horse training and care services." The trial court adopted the magistrate's entry as the final order of the court, and this Court affirmed the decision in *McCown v. Eichenberger*, 2022-Ohio-2861 (5th Dist,).

{¶40} On October 12, 2022, the trial court granted in part and denied in part Mr. Eichenberg's motion to dismiss the counterclaim. The trial court ruled that Ms. McCown's counterclaims for unjust enrichment and breach of contract were barred by claims preclusion.

{¶41} Res judicata can be divided into two separate subparts: claim preclusion and issue preclusion. *Ohio Kentucky Oil Corp. v. Nolfi*, 2013-Ohio-5519, ¶ 18 (5th Dist.), citing *Grava v. Parkman Twp.,* 73 Ohio St.3d 379, 381 (1995). The Ohio Supreme Court analyzed the doctrine of claim preclusion in the *Grava* decision and stated "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava,* at syllabus (approving and adopting 1 Restatement of the Law 2d Judgments (1982), Sections 24—25).

{¶42} In *Grava,* a property owner filed an initial application for zoning for a proposed business. *Id.,* at 379. After his initial application was denied, the property owner then filed a second application seeking zoning for the same building that was the subject

of his earlier application under a separate zoning ordinance regarding nonconforming use. *Id.,* at 379–380. The Ohio Supreme Court adopted the "transactional" approach to res judicata. *Id.*, at 382. The Court determined that the property owner's second zoning application was barred by claim preclusion because the zoning applications for the same building derived from the same transaction or the same "common nucleus of operative facts." *Id.,* at 382. The property owner had a "full and fair opportunity to present his case" during his first zoning application where he did not appeal the denial of the zoning request and "simply failed to avail himself of all available grounds for relief in the first proceeding." *Id.,* at 383. He was therefore barred by res judicata, claim preclusion, from bringing a second zoning request. *Id.*

{¶43} In this case, the trial court correctly determined that Ms. McCown set forth a breach of contract claim and an unjust enrichment claim in her counterclaim, arguably the same that were litigated in the small claims action. She also sought, however, a declaratory action regarding the validity of her agister's lien and whether she can sell the horses. As for that count, the trial court held that the lien arose when Mr. Eichenberger failed to pay for feed and board, and that the claim arose when Ms. McCown submitted a demand for payment as required by R.C. 1311.49 on March 25, 2022.

{¶44} The trial court further noted that Ms. McCown could not have filed her declaratory judgment claim in the prior case because the small claims division of a municipal cannot grant a declaratory judgment. Revised Code Section 1925.02(A)(1) provides in relevant part that a small claims division "has jurisdiction in civil actions for the recovery of taxes and money only." Accordingly, a small claims court does not have jurisdiction to "rule on matters of an injunctive nature" or "claims for equitable relief." *Small*

*v. Stub Hub, Inc.,* 2016-Ohio-3438, ¶ 3 (9th Dist.). *Huff v. All Am. Basement Waterproofing & Home Servs., Inc.,* 2010–Ohio–6002, ¶ 45 (5th Dist.).

{¶45} The trial court did not abuse its discretion in determining that the counterclaim was properly filed. It did not err as a matter of law in determining the claim for a declaratory judgment that the agister's lien was valid was not barred by a previous case. The third assignment of error is overruled.

IV.

{¶46} In his fourth assignment of error, Mr. Eichenberger has argued that the trial court erred by dismissing his complaint with prejudice when it was revealed on cross examination that he had previously been deemed a vexatious litigator in Franklin County. He has maintained that the vexatious litigator statute required any dismissal to be without prejudice, that the defendant's counsel did not produce the order in discovery, that defendant's counsel and the court were "also bound by the requirements" of the statute and should not have proceeded with the trial, and the vexatious litigator judgment entry was not legally valid.

{¶47} Addressing Mr. Eichenberger's insistence that the statute required dismissal without prejudice, we note that the statute does not specify the phrase "without prejudice." R.C. 2323.52(I) states:

> Whenever it appears by suggestion of the parties or otherwise that a person found to be a vexatious litigator under this section has instituted, continued, or made an application in legal proceedings without obtaining leave to proceed from the appropriate court of common pleas or court of appeals to do so under division (F) of this section, the court in which the legal proceedings are pending *shall dismiss the proceedings* or application of the vexatious litigator. (Emphasis added).

Citing *State ex rel. Sapp v. Franklin Cty. Court of Appeals,* 2008-Ohio-2637, ¶ 26, the trial court properly determined that this section of the statute mandated dismissal and that the court lacked jurisdiction to hear Mr. Eichenberger's claims.

{¶48} Looking to other types of dismissal for guidance, this Court has determined that pursuant to Civ.R. 41(B)(1) a trial court may properly take into account the entire history of the litigation and dismiss a case with prejudice for failure to obey a court order. *Ford v. Smith,* 2018-Ohio-3751, ¶ 16 (5th Dist.). Although dismissals with prejudice are subject to higher scrutiny, the Ohio Supreme Court has stated that it will not hesitate to affirm the dismissal of an action when "'the conduct of a party is so negligent, irresponsible, contumacious or dilatory as to provide substantial grounds for a dismissal with prejudice for a failure to prosecute or obey a court order.'" *Quonset Hut, Inc. v. Ford Motor Co.,* 80 Ohio St.3d 46, 48 (1997)*,* quoting Tokles *& Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 632 (1992).

{¶49} Rather than acknowledging his own failure to seek leave to continue with this action or to bring the order to the trial court's attention, Mr. Eichenberger instead attempted to place blame on opposing counsel for failing to disclose a copy of the judgment entry during discovery. This court finds his argument that he was somehow "ambushed" to be unpersuasive when he had knowledge of the order, understood its significance, and failed to bring it to either trial court's attention. We find it difficult to see victimhood when he had the opportunity to properly address the situation as set forth in the statute.

{¶50} The statute expressly provides the means for a vexatious litigator to bring another claim. The Ohio Supreme Court has expressly held:

the statute is not designed, nor does it operate, to preclude vexatious litigators from proceeding forward on their legitimate claims. Instead, it establishes a screening mechanism under which the vexatious litigator can petition the declaring court, on a case-by-case basis, for a determination of whether any proposed action is abusive or groundless. Thus, R.C. 2323.52(F) provides that the court of common pleas is precluded from granting leave to the vexatious litigator unless it "is satisfied that the proceedings or application are not an abuse of process of the court in question and that there are reasonable grounds for the proceedings or application."

*Mayer v. Bristow*, 91 Ohio St.3d 3, 15 (2000). In determining the importance of a vexatious litigator seeking such leave, the Court stated "[c]onsidering the nature of the abuse that the statute is designed to remedy, it becomes quite evident that the General Assembly has made a rational policy choice to force the vexatious litigator into a single forum for preliminary review." *Id.* at 16, citing *see*, *e.g., Conley v. Shearer*, 64 Ohio St.3d 284, 292, (1992). In addition to dismissal, the trial court correctly held that Ms. McCown's counterclaim as to a declaratory judgment action on her agister's lien remained. Despite Mr. Eichenberger's proposition that the entire trial could not continue once the vexatious litigator status was exposed, the trial court properly heard the counter claim.

{¶51} Mr. Eichenberger's final contention is that the trial court failed to inquire as to the facts surrounding the vexatious litigator judgment entry. We find this argument equally unpersuasive. Mr. Eichenberger admitted to knowing that the judgment had been entered in February 2023. He has also recognized that the order was not vacated until August 21, 2023, due to lack of service. Therefore, the order was still in place on July 27- 28, 2023, when this case was tried. Any inquiry on the judge's part would not have given him the ability to change the requirement that Mr. Eichenberger was to seek leave from Franklin County to continue.

{¶52} The judgment entry in question had not been vacated at the time of trial, Mr. Eichenberger failed to seek permission to continue this case from the Franklin County Court of Common Pleas, and he failed to bring it to the attention of the Delaware County Court of Common Pleas as required by statute. The fourth assignment of error is overruled.

V.

{¶53} In his fifth assignment of error, Mr. Eichenberger has argued that the trial court erred in granting attorney's fees to the McCowns. He maintained that they should not have been granted for a myriad of reasons, but acknowledged that they could be granted when a party acts in bad faith.

{¶54} Ohio follows the "American Rule" which provides that each party is responsible for their own attorney's fees except as provided for in certain statutory actions or when the opposing party is found to have acted in bad faith, vexatiously, wantonly, obdurately, for oppressive reasons, or the party somehow engaged in malicious conduct. *Sorin v. Bd. of Edn. of Warrensville Heights Sch. Dist.*, 46 Ohio St.2d 177, 180–81, (1976). The trial court has broad discretion on this issue of whether to award attorney's fees. *Stern v. Whitlatch & Co.*, 91 Ohio App.3d 32, 38 (9th Dist. 1993).

{¶55} In this case, the trial court found that Mr. Eichenberger acted in bad faith. Bad faith has been defined as "a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud [or an] actual intent to mislead or deceive." *State ex rel. Cleveland Assn. of Rescue Emps. v. The City of Cleveland*, 2023-Ohio-3112, ¶ 32.

{¶56} The trial court weighed several factors in reaching its conclusion, including the history of the case and his handling of the vexatious litigator determination. Despite knowing of an order against him, he did not disclose the order to the court. It was not disclosed until he was being cross examined, and he then argued that it was "irrelevant." He did not comply with the order, which was in effect at the time of trial. Moreover, he disregarded judicial resources by failing to appear the second day of trial, well after the jury had been seated. In response to the vexatious litigator judgment reveal, he attempted to voluntary dismiss his claims without prejudice, even though the trial had already commenced. As an attorney, Mr. Eichenberger knew what was required of him.

{¶57} A determination of whether to award attorney fees and the amount of such fees is within the sound discretion of the trial court. *MCM Home Builders, LLC v. Sheehan*, 2019-Ohio-3899, ¶ 79 (5th Dist.). Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court shall not interfere. *Id.,* citing *Polaris Owners Assn., Inc. v. Solomon Oil Co.*, 2015-Ohio-4948, ¶ 86 (5th Dist.).

{¶58} In this case, we can find no abuse of discretion in awarding attorney's fees based on the trial court's review of the bad faith and vexatious litigator issues. Bad faith and vexatious conduct are both exceptions to the American Rule for attorney's fees. The court awarded only half of the fees the defendants incurred, and it deducted $300.00 for commuting costs that were not allowed, making the fees reasonable and proper. Defendant's fifth assignment of error is overruled.

## CONCLUSION

{¶59} Defendant's assignments of error are overruled. The judgment of the Delaware County Court of Common Pleas is affirmed.

By:  Delaney, P.J.,

Hoffman, J. and

Baldwin, J., concur.